# David H. Hansen and Miriam Klein-Hansen, Thomas Jensen v. Town of Charleston

[597 A.2d 321]

No. 90-193

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed August 30, 1991

*James M. Ritvo*, Montpelier, and *Heather R. Wishik*, North-field, for Plaintiffs-Appellees.

*William Boyd Davies* and *Rachel A. Hexter* of *May, Davies, Franco & Hexter*, Newport, for Defendants-Appellants.

*Glenn C. Howland* of *McKee, Giuliani & Cleveland*, Mont-pelier, for amicus curiae Vermont League of Cities and Towns.

**Dooley, J.** Defendant, Town of Charleston, appeals from an order of the Orleans Superior Court reclassifying a section of Town Highway No. 5 from class 4 to class 3. We affirm.

Approximately twenty persons, including ten children, live in the five full-time residences along the section of Town Highway No. 5 involved in this case. On no other class 4 highway in the Town are there as many permanent residences. The road is seasonably impassable and is gradually deteriorating.

Because of the state of the road, the residences do not have year-round fire or police protection. The school bus cannot go up the road so that one disabled child, who lives on the road, must move elsewhere during the school year in order to get to school. The road section contains an old Town cemetery, and from it there are attractive scenic views.

On September 5, 1988, at least five percent of the voters of the Town filed a petition asking that a one mile section of Town Highway No. 5 be reclassified from class 4 to class 3 so that it would be improved. The selectmen held a hearing on November 3, 1988 and on December 8, 1988 issued a decision denying the petition. The selectmen relied primarily on a reclassification policy adopted by the selectmen in 1981. That policy set as minimum requirements for a reclassification to class 3 that: (1) property improvements on land abutting the road have a grand list value of at least $200,000 per mile; (2) there be at least three year-round residences on the road; and (3) the cost of upgrading the road to class 3 standards must be borne by the persons seeking reclassification. The selectmen found that the first and third requirements were not met since the grand list value of the improvements was only $173,000 and the petitioners were willing to pay only $5,000 of the $50,000 cost to improve the road. They concluded that the "public good, necessity and convenience of the inhabitants of the town" did not require a reclassification.

The petitioners appealed to the Orleans Superior Court, which appointed commissioners pursuant to 19 V.S.A. § 751. After a hearing, the commissioners issued a report supporting the decision of the selectmen. They found that the anticipated reappraised value of the buildings on the road would be $207,000. They also found that despite the presence of full-time residences on the road, the road was often impassable at times. They found, however, that these residences were constructed after 1973 when roads were classified in the Town and that the residents were unwilling to pay for the full cost of upgrading

the road. Based on the 1981 policy and the unwillingness of the residents to provide the $50,000 to upgrade the road, they concluded that the public good, necessity and convenience of the citizens of the Town did not require the reclassification.

The petitioners then entreated the court to reject the commissioners' report. After taking evidence, the court did so. It rejected the applicability of the 1981 reclassification policy and the determinative effect of the unwillingness of the petitioners to pay for upgrading the road, concluding that "fifty thousand is a standard expenditure for this town or any other small town in Vermont." It concluded that the "public good, necessity and convenience as demonstrated by the evidence and the facts found in these cases do require the reclassification of this segment from class 4 to class 3." Acting pursuant to 19 V.S.A. § 302(a)(3)(C), the court gave the selectmen five years to bring the road up to class 3 standards. The court did not require the petitioners to pay any of the cost of the upgrade.

On appeal, the Town raises four arguments: (1) the court had no jurisdiction to reject the report of the commissioners; (2) the court erred in ordering reclassification without a finding that the Town had employed discriminatory standards; (3) the court erred in failing to apportion the costs of the upgrade between the petitioners and the Town; and (4) the finding that the $50,000 upgrade cost was a standard expenditure for the Town was clearly erroneous.

The Town's first argument is that the court could not reject the commissioners' report. Although the argument was not raised below, the Town argues that the error is jurisdictional and can be raised for the first time on appeal.

■■ The trial court's jurisdiction is based primarily on 19 V.S.A. § 310(b), which provides that reclassification is subject to the "same procedures as for laying out highways." See *Gilbert v. Town of Brookfield*, 134 Vt. 251, 251, 356 A.2d 524, 525 (1976) (jurisdiction in reclassification appeal based on 19 V.S.A. § 931(2) (now § 310(b)). That procedure includes an appeal from the selectmen's decision to the superior court. See 19 V.S.A. § 750. The matter must be referred to three disinterested commissioners "to inquire into the convenience and necessity" of the proposal and report to the court. See 19 V.S.A. §§ 753, 756. On receiving the report, the "court may reject or accept [it] in

whole or in part" and render an order or decree with respect to the issue before it. 19 V.S.A. § 759.

Although the statute clearly authorizes the court to reject the commissioners' report in whole or in part, the Town argues that the Legislature never intended to allow the court to reject a report that denies a reclassification. In making this argument, it relies primarily on *Shattuck v. Town of Waterville*, 27 Vt. 600, 602 (1855), where Justice Redfield held that another statute did not authorize the Supreme Court to reject the report of a committee that a road going through two counties should not be laid out absent a finding of "fraud or gross partiality." The wording of the statute involved in *Shattuck* allowed the Court to reject the report of the committee in whole or in part.

Since *Shattuck*, we have defined more clearly the role of the court and the commissioners in road cases. In *Ferguson v. Town of Sheffield*, 52 Vt. 77, 81 (1879), this Court defined the superior court's role in these cases as follows:

> In so far as the courts have any duty or power devolved upon them in respect to laying out and discontinuing highways, it is derived from the statutes. This duty and power is of such character that it should be performed and exercised in a practical manner, not by technical rules. These highway petitions are, in view of the nature and purpose of the inquiry, addressed largely to the discretionary power of the court. They are based on an alleged public as well as individual necessity and convenience. They involve the imposition or relief of a public burden.

In *Gray v. Middletown*, 56 Vt. 53, 55 (1884), the Court concluded that a "report of the commissioners is only *prima facie* evidence of the existence of a legal necessity [f]or the establishment of the highway." The Court added, "The commissioners are but agents or officers of the court in investigating the subject matter of the inquiry. The court is not bound by their action . . . ." *Id.* at 57. The Court stated in *Bolles v. City of Montpelier*, 93 Vt. 513, 517, 108 A. 565, 567 (1920), that the issue is one of fact "which in the last resort is to be determined exclusively by the county court." See also *Pillsbury v. Town of Wheelock*, 130 Vt. 242, 244, 290 A.2d 42, 44 (1972).

■   With the adoption of the Vermont Rules of Civil Procedure, we have employed the general term "master" to de-

scribe persons to whom a case is referred to take evidence. See V.R.C.P. 53(a). In cases where a reference is made pursuant to statute, the court must accept a master's findings of fact unless clearly erroneous, V.R.C.P. 53(e)(2)(ii), and the court "may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." V.R.C.P. 53(e)(2)(iii). Nothing in the rule suggests that the court's power to reject a master's report depends on the contents of the report.

■ ■ We believe that the limited standard of review of V.R.C.P. 53 addresses, in part, the major concern of the Court in *Shattuck v. Town of Waterville* that it was incapable of dealing with the factual issues if the master's report failed to resolve them because it recommended no action. As to fact finding, it puts the court in an appellate role with respect to the master. In view of (a) the final authority of the court over the matter before it, (b) the court's discretion in using its authority, and (c) the lack of any suggestion in the statute that the court's power depends on whether the commissioners recommend the proposed action, we conclude that the court can reject a commissioners' report recommending that a road not be reclassified.

■ We also conclude that the court acted within its authority. While the ultimate question is one of fact, see *Cersosimo v. Town of Townshend*, 139 Vt. 594, 597, 431 A.2d 496, 498 (1981), there is no factual dispute in this case. The court's disagreement with the commissioners' report involved a solely legal issue—whether the Town's 1981 reclassification policy controlled this petition. The court did not inappropriately disregard the commissioners' report.

■ The Town's second argument is that the court could not order reclassification of the road without a finding that the Town acted discriminatorily or arbitrarily in refusing reclassification. The argument is based on *Gilbert v. Town of Brookfield*, 134 Vt. at 254, 356 A.2d at 525, and *Catlin v. Town of Hartland*, 138 Vt. 1, 2, 409 A.2d 596, 597 (1979), where this Court upheld reclassification orders based on superior court findings of discriminatory application of town policy. Neither case suggests, however, that a finding of discrimination is a pre-

requisite to reclassification by the superior court. In fact, in *Catlin*, we noted that an alternative ground for the trial court's decision was "compliance with statutory standards for reclassification, even in the absence of discrimination" and this alternative was sufficient to validate it. 138 Vt. at 2, 409 A.2d at 597. Moreover, the Legislature responded to *Gilbert* and *Catlin* by adding statutory language that a class 4 highway need not be reclassified to class 3 "because there exists within a town one or more class 3 highways with characteristics similar to the class 4 highway." 19 V.S.A. § 708(b), as added by 1979, No. 143 (Adj. Sess.), § 1 (adding 19 V.S.A. § 341(c), now recodified as § 708(b)). The ground used in those cases, and argued for here as a prerequisite, is no longer available as a basis for reclassification.

■ The standard applicable in road reclassification cases is whether "the public good, necessity and convenience of the inhabitants of the municipality require the highway to be . . . reclassified as claimed in the petition." 19 V.S.A. § 710. The trial court used this standard and concluded that reclassification was required. The Town has not attacked that conclusion directly. It is sufficient to support the order of the court.

■ We are sensitive to the concerns raised by amicus curiae Vermont League of Cities and Towns that the selectmen are entrusted with the authority over town roads, see 19 V.S.A. § 303 (town highways are under "the general supervision and control of the selectmen of the town"), and we must minimize the encroachment on this authority. The statutes often give selectmen broad authority to manage town affairs. See, e.g., *Kirchner v. Giebink*, 150 Vt. 172, 175, 552 A.2d 372, 375 (1988). In this area, however, the Legislature has placed the selectmen in a quasi-judicial role to hear classification petitions, with appellate jurisdiction over their actions in the superior court. See, e.g., *Dunn v. Town of Pownal*, 65 Vt. 116, 119–20, 26 A. 484, 485 (1893) ("in laying out, altering and discontinuing highways, the functions of selectmen are more than administrative; they are largely judicial, and they proceed much after the manner of judicial bodies"). The selectmen can adopt policies to determine their action, like the reclassification policy involved in this case, but those policies do not bind the superior court in exercising

its discretionary power "in a practical manner, [and] not by technical rules." *Ferguson v. Town of Sheffield*, 52 Vt. at 81.

The Town's third argument is that the court erred in failing to order apportionment of the costs of the upgrade of the road to class 3 standards. The commissioners, and therefore the court, are authorized to require petitioners who "will be especially benefited" to pay part of the costs of road building which they order to be done. 19 V.S.A. § 755. The Town argues that such a payment order should have been made in this case.

■ Whatever the merits of the Town's argument, we will not consider it because it is raised for the first time on appeal. See *State v. Shure*, 156 Vt. 646, 647–48, 592 A.2d 868, 870 (1991) (mem.). Throughout the proceedings before the commissioners and the superior court, the Town argued that reclassification should not be ordered. It never argued alternatively that the costs should be apportioned. While the record might show some of the persons who were specially benefitted by the reclassification, there is no basis for determining an appropriate apportionment of costs. The issue has been waived.

The Town's final argument is that the finding that the expenditure of $50,000 to upgrade the road is a standard expenditure for this town or other small towns in Vermont is unsupported by any evidence and is clearly erroneous. The court's decision was made orally on the record and did not distinguish clearly between findings of facts and conclusions of law. Neither party asked for written findings. See V.R.C.P. 52(a).

■ The financial impact of the upgrade on the Town was clearly relevant to the determination of the public good, necessity and convenience, and the court had to consider it. See *Whitcomb v. Town of Springfield*, 123 Vt. 395, 399, 189 A.2d 550, 553 (1963). Although the Town has characterized the court's assessment of financial impact as a finding of fact, it should be viewed as a conclusion about the reasonableness of the expenditure for the Town. It reflected the balancing process that was at the heart of the court's decision-making. We find no error.

*Affirmed.*