Heddon v. Town of Hinesburg, No. S0213-03 CnC  (Norton, J., Sept. 28, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                           SUPERIOR COURT

Chittenden County, ss.:                                    Docket No.S0213-03 CnC

HEDDEN

v.

TOWN OF HINESBURG

## Findings of Fact

Case came forward on the merits on September 10, 2004.  Evidence disclosed the following facts adopted by the court.

Robert Hedden appeals the January 21, 2003 Hinesburg Selectboard's decision to re-classify Boutin Road South from a Class 3 to Class 4 road. Boutin Road South in Hinesburg is also known as T.H. 13.  It was first classified as a town road in 1974.   Hedden owns a 10.1-acre

parcel, home, and attached garage, with outbuildings.  Hedden's is the only residence served by Boutin Road South; his address is 526 O'Neil Road, which runs perpendicular to Boutin Road South.

Hedden purchased his home on October 17, 2002, believing his home would be serviced by a Class 3 town highway, which would be plowed in the winter, as it had since Tom Myers moved there in 1973. Tom Myers and his wife had purchased the lot on Boutin Road South in 1973, and they had made an agreement with the Town of Hinesburg to improve the road.  During the 29 years that Myers owned the property, no one from the Town spoke to him about reclassification, and he did not warn Hedden about the possibility.  Thirteen days after the closing, Hedden received notice from the town that the Selectboard was going to hold a hearing on whether to continue plowing his road.  The notice was dated October 30, 2002.

Myers testified that when he bought the property in 1973, the road had been a "lane" used by his farmer-grantor, and historically was an old stagecoach road.  When Myers was building his house at the top of a steep hill, he met with Ted Palmer, Hinesburg Road Commissioner.  They agreed to have Myers remove trees, blast off the crown of the hill, and install a drain, while the town graded and filled in the road.  Eventually, the road was a traveled way, 15–20 feet wide.  Myers removed more trees near his house so the town would have a turn-around for the plows; all was graveled and hard packed.

Since 1973, the town plows the road every year.  If there was a washout, Myers and the town would grade again.  The town's agreement to maintain and plow was never reduced to writing.

Prior to selling to Robert Hedden, Myers learned from Rocky Martin that the town was "thinking of discontinuing some services," but Myers did not "really discuss" it with Hedden. He did tell Hedden of the gentleman's agreement with the town for winter maintenance and regrading.

At sale, Boutin Road South ran 0.08 miles from O'Neil Road to the Myers's house, the only home on the road. Myers said it has become a much better road in recent years, smooth enough for a motorcycle.

Hedden testified that he had no reason to suspect the town was going to change Boutin Road South's classification from Class 3 to Class 4. The town continues to plow and grade in the summer at plaintiff's request since the reclassification and while the case is on appeal. Hedden testified that if the Class 3 status is given up, then he would prefer the road be discontinued so he could limit any traffic on the road and maintain it himself.

Martin testified that Boutin Road South is a short, gravel road off O'Neil, about 500 feet long and 12–14 feet in width. It is flat at first and then steeply goes up to the Hedden home. He stated that the road is not up to town standards, which would require widening it to 18 feet, building ditches on either side, and adding a greater depth of packing material.

Maintenance is currently twofold, grade twice in summer and plow and sand in winter. Martin described this work as a difficult because it is a small section of road where sand-laden trucks can not get up the hill and had become completely stuck on two occasions. Such incidents, Martin felt, create a drain on crew and equipment and disrupt services to main roads. The town has four vehicles for snow removal, three plows and one, one-ton pickup. When the town needs to rescue a stranded truck, one-half of the fleet is involved and all snow removal is "thrown off." Martin

testified that this problem also presented a threat to staff and vehicles. He believes that the slope and width would require further blasting and fill to bring up to standard.

In its decision to re-classify, the Selectboard found that the roads discontinued do "not meet Hinesburg Road Standards. In addition, the narrowness of and the lack of turn-arounds on these roads have caused accidents in the past and pose a continuing safety hazard to Town employees, property, and the public." The reference to "accidents" did not apply to Boutin Road South, but rather to the other two road segments discontinued at the same time. Boutin Road South has a turn-around at its end.

The board also found that, since these roads "may provide future connections for recreational corridors, discontinuance of the [road segments] is not prudent." This was also a reference to other road segments discontinued in January 2003 and not Boutin Road South.

Hedden appealed the decision of the Selectboard to the Superior Court pursuant to V.R.C.P. 75, the appellate choice of those objecting to board decisions, which are not appealable by statute.

**Conclusions of Law**

The Town of Hinesburg's authority to reclassify roads comes from statute. 19 V.S.A. §§ 302, 303, 708. Accordingly, the Hinesburg Selectboard may initiate proceedings and reclassify a highway based on the criteria that the change is in the public good, there is a necessity, and it is a convenience of the inhabitants of the town. 19 V.S.A. § 710. Here the Town Selectboard followed the statutory procedures and made findings that

the reclassification was required by each of the three criteria.

The court's review of this decision on appeal is guided by the same standards. Hansen v. Town of Charleston, 157 Vt. 329, 332, 335–36 (1991). This review is an appellate level review and is not bound by "technical rules" but exercised in a practical manner. Id. at 335–36.

In this case, the Selectboard's findings are echoed by the findings of this court. Maintaining the road at a Class 3 status was shown to be difficult and time-consuming. It posed a safety risk to the road crew and their equipment. This in turn led to delays in plowing the busier roads, therein creating a larger threat to public safety. Functionally, this road is a driveway to the Hedden's home, and the expenditure of resources outstrips the number of people served by the Town's efforts. We conclude that the Town's decision meets the three criteria in that it benefits everyone in the Town, even, albeit to a lesser extent, Hedden as a member of the community.

This appeal also lacks any evidence that the Town's decision was arbitrary and discriminatory. Id. at 335. As an alternative ground to denying a reclassification, the court may reverse the Selectboard if it has applied its power in an uneven manner, that singles out a road or roads. See Catlin v. Town of Hartland, 138 Vt. 1, 2 (1979). Here, the reclassification of Boutin Road South was one of three roads reclassified to reduce the town's expenses and preserve their resources from potential harm. There is no evidence that the road was singled out or that Hedden was targeted by the Town's decision.

Finally, Hedden urges the court to modify the Town's reclassification to downgrade the road into a private way that he may control the in-flow of traffic, especially ATVs and snowmachines, onto the

road.  This argument proposed by appellant has an air of equity, but this belies the true nature of the reclassification.  By downgrading Boutin Road South, the Town does not strip Hedden of any personally held property right derived  as an abutting landowner.  Perrin v. Town of Berlin, 138 Vt. 306, 307 (1980).  Rather, the right affected is a public right held in common by all taxpayers and citizens.  Therefore, Hedden is not losing any right that equity can repair.  Certainly, he is suffering a certain loss of convenience, having the town regularly re-grade and plow the essentially private road to his house.  Yet, this was a collateral benefit, much in the way that a homeowner might benefit from living next door to a fire station.  If the Selectboard decides to move the fire station to the other side of town, this neighbor suffers a loss of convenience, but it is not a loss to which there is a remedy at law or equity.

While Hedden has demonstrated that some of the Town's reasons for continuing the downgraded roads as Class 4 do not apply to Boutin Road South, he has not established a compelling reason why the Town should be forced to forfeit its interest in Boutin South Road as a public way.  The benefits of such a result are clear to Hedden, but it is not clear what public good, necessity, or convenience would be served by the complete closing of this public way.

Mr. Hedden's argument that the road is of no benefit to the Town is not supported by the evidence; his argument is that the road is of such little value to the Town and of such great value to him that it should be made a private way.  The criteria, however, is not what is in Mr. Hedden's interest but the public's good, necessity, and convenience.  In this case there was no proof that Boutin Road South as a Class 4 road is of no use to the Town or that Hedden's individual concerns outweigh the public good.  Even if there is no articulate reason for keeping Boutin Road South, there is no reason to

privatize it either.  As Ambrose Bierce argued against suicide: "What's not worth having cannot be worth taking," the same can be said for Boutin Road South.

More importantly, neither the record nor the testimony was clear that this argument was made to the Selectboard during the original hearing.  It is therefore, more in line with 19 V.S.A. § 708, which allows citizens to petition for reclassification, to affirm the Selectboard's reclassification and leave it open for Hedden to petition the Town to further reclassify the road. This will allow the Town to study the issue and make its own conclusions before granting or denying the petiton.  The Town may even decide to sell Hedden their easement altogether.  Any way is superior to a decision from the court that does not have evidence to evaluate how a further re-classification would impact the Town's greater good.


### Order
Based on the foregoing, the court affirms the reclassification of Boutin Road South and rejects Robert Hedden's appeal.


Dated at Burlington, Vermont_____, 2004.



_____          _____
Assistant Judge                                                                    Judge