2013 VT 72



Demarest and Moulton v. Town of
Underhill (2012-403)

 

2013 VT 72

 

[Filed 27-Sep-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 72
 
  


 No. 2012-403
 
  


 David Demarest and Jeffrey
 Moulton
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
 Town of Underhill
 
 
 May Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Geoffrey
 W. Crawford, J.
 
 
  
 
 Christopher D. Roy of Downs Rachlin Martin PLLC, Burlington,
for Plaintiffs-Appellants.

 

John W. O’Donnell of Bergeron, Paradis & Fitzpatrick LLP,
Burlington for Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
ROBINSON, J.   Petitioners appeal from the trial
court’s 2012 order upholding the Town of Underhill’s decision to reclassify a
segment of Town Highway 26 (TH 26) from a Class 3 and Class 4 highway to a
legal trail.  Petitioners argue that: the trial court should have
appointed commissioners to make a report concerning the reclassification
decision pursuant to 19 V.S.A. §§ 740-743 rather than reviewing the
reclassification decision on the record pursuant to Vermont Rule of Civil
Procedure 75; the court erred in declining to stay the appeal pending
resolution of a related action concerning maintenance of the segment; and the
evidence did not support the Town’s reclassification ruling.  We affirm.

¶ 2.            
Petitioners own real property adjacent to TH 26.  In 2001 the
Underhill Selectboard reclassified portions of TH 26 as a legal trail.[1]  At the time, some of the roadway in
question was designated as a Class 3 highway, and some was a Class 4 highway.
 To that end, the Selectboard provided the statutorily required public
notice, conducted a site visit, conducted a public hearing, and voted to order
the reclassification.  The Town complied with all of the statutory
procedures for reclassifying a road, except that it failed to formally record
the reclassification order in the land records.  In 2002, after public
notice and an informational meeting, the Selectboard adopted a Trail Travel
Ordinance for Crane Brook Trail—the name of the trail created by the purported
2001 reclassification.  The ordinance contemplated that the trail would be
used for recreational purposes.  After the 2001 reclassification process,
the Town stopped maintaining the purportedly reclassified segment of TH 26 as a
road.  

¶ 3.            
In the years following the purported 2001 reclassification, the
condition of the segment of old TH 26 at issue here deteriorated significantly. 
In the absence of culvert maintenance and drainage management, beaver ponds by
the road expanded causing wash-out and erosion in portions of the
segment.  

¶ 4.            
In February 2010, interested parties filed suit in superior court pursuant
to 19 V.S.A. § 971 seeking an order requiring that the Town repair and
maintain the disputed segment (the maintenance case).  Although towns are
not responsible for maintaining trails, In re Town Highway No. 20 of the
Town of Georgia, 2003 VT 76, ¶ 3 n.*, 175 Vt. 626, 834 A.2d 17 (mem.)
(citing 19 V.S.A. § 302(a)(5)), the petitioners argued that the Town’s
2001 reclassification attempt was ineffective, and that the Town thus had an
obligation to maintain the road.  19 V.S.A. §§ 970-79.

¶ 5.            
The Town defended that action, but in March 2010 it also initiated a new
reclassification proceeding in light of the challenge to the legal sufficiency
of the 2001 reclassification.  The Selectboard provided notice, conducted
a site visit, solicited written comments on the reclassification question, and
held a hearing to take testimony from interested persons.  In a June 2010
“Order of Classification,” the Selectboard determined that:  

TH 26 should now consist of three
separate segments:  The first segment shall extend, as before, from
Pleasant Valley Road north to the Town Garage and shall be maintained as a
Class 3 highway; the second shall be a legal trail extending from the Town
Garage north to a point just south of the current driveway access to TH 26 from
the property now owned by David Demarest, and; the third remaining segment
shall extend from the northern end of the legal trail north to Irish Settlement
Road, shall be known as Fuller Road, and shall be maintained as a Class 4
highway.  

The order asserted that the
reclassification action “was taken for the public good, convenience and
necessity of the inhabitants of the Town of Underhill,” and the Selectboard
identified sixteen reasons in support of its decision.  This 2010
reclassification order is the subject of this appeal.

¶ 6.            
Petitioners appealed the Selectboard’s reclassification order to the
superior court, ostensibly pursuant to V.R.C.P. 74 and 19 V.S.A.
§ 740.  Section 740 provides, in relevant part, that: 

[w]hen
a person owning or interested in lands through which a highway is laid out,
altered, or resurveyed by selectboard members, objects to the necessity of
taking the land, or is dissatisfied with the laying out, altering, or
resurveying of the highway, or with the compensation for damages, he or she may
appeal, in accordance with Rule 74 of the Vermont Rules of Civil Procedure, to
the superior court . . . .  

 

Petitioners argued that the
reclassification of TH 26 constituted an “alteration,” the statutory procedure for
reviewing “alterations” of highways thus applied, and that therefore the court
should appoint “three disinterested landowners as commissioners, to inquire
into the convenience and necessity of the proposed highway, and the manner in
which it has been laid out, altered, or resurveyed, and . . . as to
the amount of damages sustained by the appellant.”  19 V.S.A.
§ 741.  Initially the parties apparently agreed that the
reclassification was an “alteration” of the road such that 19 V.S.A. § 740
governed the appeal; the trial court expressed skepticism about the parties’
shared approach, but reluctantly agreed to proceed on that basis
initially.  

¶ 7.            
Petitioners requested that the court stay proceedings in the
reclassification case pending resolution of the maintenance case.  They
argued that the condition of the disputed segment had deteriorated
significantly since the Town stopped maintaining it as a road after the 2001
reclassification effort, and the state of the segment and the cost of restoring
it were substantial factors underlying the Selectboard’s reclassification
decision.  In the maintenance case, the petitioners sought an order
requiring the town to restore the disputed segment to the condition of a
road.  Because the court’s decision in the maintenance case could lead to
restoration of road-level conditions on the segment, thus undercutting the
rationale in support of the reclassification, petitioners argued that the court
should decide the maintenance case first.  The superior court concluded
that the issues presented in the two cases were distinct and denied
petitioners’ motion for a stay.  

¶ 8.            
While the appeal of the Town’s 2010 reclassification decision was
pending, in May 2011, the superior court ruled in the context of the
maintenance case that the 2001 reclassification effort was, in fact,
ineffective because the Town had failed to record the reclassification order in
the town land records.  The court then stayed further action on the
maintenance case pending resolution of the reclassification appeal.[2]  

¶ 9.            
Also while petitioners’ appeal was pending, this Court issued Ketchum
v. Town of Dorset, 2011 VT 49, 190 Vt. 507, 22 A.3d 500 (mem.).  In Ketchum,
we rejected the argument that reclassification constitutes an “alteration”
under 19 V.S.A. § 740, and consequently, rejected the argument that an
appeal of a reclassification decision requires the appointment of a panel of
commissioners to review a town’s reclassification decision.  Id.
¶ 12.  We held that “review by certiorari through [V.R.C.P.] 75
provided the proper procedure for appeal to the superior court.”  Id.
¶ 14.  In such cases, the superior court conducts an on-the-record
review to determine if there was adequate evidence to support the town’s
decision.  Id. ¶ 16; see also id. ¶ 14 (noting
that in Rule 75 appeals “jurisdiction is usually confined to reviewing
questions of law, and consideration of evidentiary questions is limited to
determining whether there is any competent evidence to justify the
adjudication” (quotation omitted and emphasis added)). 

¶ 10.        
In light of our decision in Ketchum, the superior court ruled
that the reclassification appeal was subject to an on-the-record review and the
court thus did not refer the matter to a panel of commissioners.  In a
twelve-page decision that surveyed the available record evidence, the court
concluded that the Town’s 2010 reclassification order was supported by the
evidence.  

¶ 11.        
On appeal, petitioners argue that the superior court erred in treating
the appeal as a Rule 75 appeal, rather than a de novo proceeding requiring the
appointment of commissioners as set forth in 19 V.S.A. §§ 740-41. 
They further argue that the court erred in denying their motion for a stay so
they could pursue the maintenance case first.  Finally, they challenge the
merits of the superior court’s decision, arguing that the Town improperly
created the conditions that supported the reclassification by failing to
maintain the segment, and that the record evidence did not support the
Selectboard’s decision.

I.

¶ 12.        
Petitioners argue that the trial court should have treated this as a
Rule 74 appeal, subject to the procedures set forth in 19 V.S.A. §§ 740-43
(setting forth procedure for reviewing challenges to taking of land, or laying
out, altering, or resurveying of highway).  We review this legal question
de novo.  See In re Town Highway No. 20, 2012 VT 17, ¶ 61, 191 Vt.
231, 45 A.3d 54.  We recently held in Ketchum that the term
“altering” in § 740 does not encompass reclassification, and rejected the
argument that a town’s decision to reclassify a Class 3 highway as Class 4 was
subject to review pursuant to § 740.  Petitioners try to distinguish
this case by pointing to a footnote in Ketchum in which we suggested
that a town’s reclassification of Class 4 roads is subject to a different
statutory procedure than the reclassification of other roads.  See 2012 VT
17, ¶ 61 n.9.  In that footnote, we cited to 19 V.S.A. § 310(b),
which provides that “Class 4 highways may be maintained to the extent required
by the necessity of the town, the public good and the convenience of the
inhabitants of the town, or may be reclassified using the same procedures as
for laying out highways and meeting the standards set forth in
[19 V.S.A. § 302].”  Because “nearly all” of the road at
issue here was a Class 4 road, because the reclassification of Class 4 roads
follows the same procedure as laying out of highways, and because the laying
out of a highway is appealable pursuant to the procedure in 19 V.S.A.
§ 740, petitioners argue that the procedure in 19 V.S.A § 740 governs
this appeal of the reclassification of a Class 4 road.  Petitioners also
point to pre-Ketchum cases in which reclassification decisions had been
reviewed using the three-commissioner process rather than on-the-record review.

¶ 13.        
Putting aside questions of preservation,[3] we find petitioners’ argument without merit. 
Our holding in Ketchum makes clear that reclassification decisions do
not fall within 19 V.S.A. § 740, and that appeals of those decisions to
the superior court are governed by Rule 75.  See also In re Town
Highway No. 20, 2012 VT 17, ¶ 61 (citing Ketchum for the proposition
that “altered” in § 741 no longer includes reclassification).  Our core
holding in Ketchum was not specific to any particular class of road; it
flowed from the plain language of 19 V.S.A. § 740, which clearly did not
include “reclassification” as among the actions subject to its reach. 
Because we concluded that 19 V.S.A. § 740 did not apply to
reclassification decisions, we held that an appeal of such a decision was
subject to Rule 75 on-the-record review.  

¶ 14.        
The appellants in Ketchum, like petitioners here, pointed to
several pre-Ketchum cases in which reclassification decisions had been
reviewed using the three-commissioner process set forth in 19 V.S.A.
§ 741.  In Ketchum, we explained that in those cases, the
issue of the proper scope of the superior court’s appellate jurisdiction had
not been raised, and thus, those cases were not controlling.  See 2011 VT
49, ¶ 9 n.* (distinguishing Hansen v. Town of Charleston, 157 Vt.
329, 597 A.2d 321 (1991) and King v. Town of Craftsbury, 2005 VT 86, 178
Vt. 623, 883 A.2d 771 (mem.)).  We added an observation that our prior
decision in Hansen was distinguishable from Ketchum because our
analysis in Hansen relied on language in 19 V.S.A. § 310(b), which
stated that reclassification of a Class 4 highway was to be done “using the
same procedures as for laying out highways.”  Id.
 Petitioners’ argument that § 310(b) requires that reclassification
of Class 4 roads be conducted using the procedures for laying out of highways,
and that those procedures call for review by court-appointed commissioners
pursuant to 19 V.S.A. §§ 740, 741, relies on this remark.  Section
310(b) does not help petitioners in this case.  We recently reiterated a
point we made more than a decade ago: § 310(b) does not apply to a
reclassification of a Class 4 road to a trail.  See In re Town Highway
No. 20, 2012 VT 17, ¶ 61, n.9 (discussing Hansen, 157 Vt. 329,
597 A.2d 321); see also Town of Calais v. Cnty. Road Comm’rs, 173 Vt.
620, 623, 795 A.2d 1267, 1270 (2002) (mem.) (noting that the Legislature had
defined a trail as “not a highway,” and there are no standards for trails in
the section for laying out highways referenced in § 310(b)).  We need
not revisit the question of whether the procedures for laying out highways
apply to upward reclassifications of Class 4 roads; because the
reclassification at issue here is from a Class 4 road to a trail, § 310(b)
does not apply.

II.

¶ 15.        
Petitioners argue that the trial court should have stayed consideration
of the reclassification appeal until the maintenance case was resolved. 
They reason that the 2010 reclassification decision should occur in the context
of what the road conditions would have been had the Town not breached
its maintenance obligations and allowed the road to deteriorate. 
Otherwise, they argue, the Town is simply “parlay[ing] its breach of duty into
a justification for municipal action manifestly designed to ratify its breach
after the fact.”  

¶ 16.        
In a June 2012 ruling, the trial court found no reason to postpone
consideration of the instant case, finding no legal requirement that the road
be brought back to its 2001 condition before the court could consider the issue
of reclassification.  Given the nature of its review under Rule 75, the
court explained, the only evidence to be considered by the court was the record
of the Selectboard’s decisionmaking, which was already complete.  

¶ 17.        
In the context of the maintenance case, moreover, the trial court
explained that the Town has broad discretion in maintaining Class 4
roads.  See 19 V.S.A. § 310(b) (“Class 4 highways may be maintained
to the extent required by the necessity of the town, the public good and the
convenience of the inhabitants of the town . . . .”); see also Town
of Calais, 173 Vt. at 622-23, 795 A.2d at 1270 (“The only rational
construction of the statutes, one fully consistent with their broad language,
is that the commissioners, as well as the superior court and this Court, must
review a selectboard’s decisions on repair of a class 4 road consistent with
the broad new power the Legislature gave the selectboard in this area.”
(footnote omitted))  While the Town’s 2001 reclassification failed due to
a recording mistake, the record of public notice and public meetings clearly
established the Town’s decision, taken in a public manner and after receiving
comment from opponents, to stop spending money to maintain the portion of the
road in question.  The trial court recognized that the Town’s discretion
was not boundless, and that it could not act in an arbitrary or discriminatory
manner, but found no record evidence that would support a finding of arbitrary
or discriminatory decisionmaking on the part of the Town.  The court
explained that the Legislature had afforded broad discretion to municipalities
with respect to their decisions about funding road maintenance, and the
municipality in this case had decided to spend its road budget elsewhere. 
That decision was subject to review by the Road Commissioners, but was not
before the court in the reclassification appeal.  

¶ 18.        
We find no abuse of discretion in the court’s denial of petitioners’
request for a stay.  Petitioners did not challenge the Town’s maintenance
decision until 2010—long after the deterioration in the road due to the lack of
maintenance had actually occurred.  Now they ask the courts to undo the
consequences of nearly a decade of unappealed maintenance decisions before
considering the Town’s reclassification decision.  As stated by the trial
court, there is no legal requirement that the road be brought back to its 2001
condition before the Town can undertake reclassification.  See 19 V.S.A.
§§ 708-710 (describing method of initiating reclassification
process).  

¶ 19.        
Nor is there any evidence that the Town acted arbitrarily in deciding to
stop maintaining this road.  On the facts of this case, it was appropriate
for the Town to base its 2011 reclassification decision on the conditions
then-existing.  The court in the maintenance case likewise reasonably
stayed that case pending resolution of the reclassification case, recognizing
that the reclassification could render the maintenance issue moot.  See 19
V.S.A. § 310(c) (“A town shall not be liable for construction, maintenance,
repair, or safety of trails.”).  Petitioners describe a scenario in which
a town might deliberately evade its minimum maintenance responsibilities for
the purpose of creating new conditions on the ground to support a
reclassification decision, rather than simply undertaking the reclassification
in the first instance.  The record does not support any suggestion that
such a hypothetical describes this case.  

III.

¶ 20.        
On the merits, petitioners argued below that, in reaching its decision, the
Town relied on its own neglect and failure to properly maintain the road over
the years to support its reclassification decision.  They also asserted
that the Town failed to explain how it weighed the evidence and reached its
conclusion, and that the Town’s decision is arbitrary and capricious because
the Town did not explain why it chose reclassification over preserving the
segment as a Class 4 highway.  Additionally, petitioners argued that there
was inadequate evidence to support the Town’s decision.  

¶ 21.        
As the superior court explained, “[t]he standard applicable in road
reclassification cases is whether ‘the public good, necessity and convenience
of the inhabitants of the municipality require the highway to be
. . . reclassified as claimed in the petition.”  Hansen,
157 Vt. at 335, 597 A.2d at 324 (quoting 19 V.S.A. § 710).  Looking
to case law, the court reasoned that the Town could properly consider the cost
of repairing and maintaining TH 26 in reaching its reclassification
decision.  The fact that the road was in disrepair was material to that
decision.  If the state of disrepair was caused by the Town’s neglect of
maintenance, the citizens had a statutory mechanism to correct the
problem.  See, e.g., 19 V.S.A. § 971.  The court explained,
though, that there might be policy reasons underlying the neglect of
maintenance, and those reasons could potentially support a different
proceeding, namely, a reclassification proceeding.  The court could find
no authority for the proposition that where a town’s decisions left a town
highway in disrepair, the town was precluded from reclassifying the road. 


¶ 22.        
With respect to the evidentiary support for the Town’s findings and its
ultimate decision, the superior court thoughtfully reviewed the available
record evidence.[4] 
The court concluded that ample evidence supported the Town’s designation of the
Crane Brook Trail for recreational use, and found ample evidentiary support for
the Town’s finding that the “trail segment in its present condition is
inadequate for safe travel and would require significant expenditures to
upgrade and maintain even as a Class 4 highway.”  With respect to the
Selectboard’s findings concerning the environmental impact associated with the
reclassification decision, the court described evidence of the environmental
sensitivity of the land in question, but concluded that there was no actual
evidence that a Class 4 highway would have a more severe impact with respect to
these factors than a trail.  The court did find some support in the record
for the conclusion that the road’s classification would affect surrounding
development that would, in turn, affect the natural resources in the area, and
concluded that decisionmaking on this basis was not irrational or
arbitrary.  

¶ 23.        
The court also rejected petitioners’ assertion that the Selectboard
failed to explain how it weighed the evidence and reached its conclusion. 
The court found the rationale for the Selectboard’s action sufficiently
apparent from the findings in the classification order.  Even putting
aside the questions about the environment and recreation, it found that the
Selectboard could reasonably reach its conclusions based solely on its findings
about the high cost of the work to repair and maintain TH 26, and the limited
benefits of doing so.

¶ 24.        
With respect to access, the court noted that the Town found that all
landowners abutting the disputed segment had access to their properties from
town highways other than TH 26, and that the Selectboard took the additional
step of adjusting the length of the legal trail so that petitioner Demarest’s
driveway would connect to the Class 4 portion of TH 26.  

¶ 25.        
Finally, the court rejected petitioners’ assertion that the
Selectboard’s stated justification for reclassifying TH 26 might be a pretext
for improper personal reasons for doing so.  Specifically, petitioner
Demarest suggested that some elected officials had been motivated to reclassify
the segment in an attempt to increase personal property values. 
Petitioners maintained that certain residents in the area had benefitted, while
petitioner Demarest had suffered significant costs.  The court found no
evidence of malicious conduct, and stated that petitioner Demarest’s
allegations to the contrary were not supported by the record.  The fact
that the Town’s decision negatively affected petitioner Demarest did not by
itself demonstrate animus against him or favoritism for others.  The court
found the instant case like Ketchum in that the Selectboard, faced with
competing considerations, made a classification determination based on its
findings.[5] 
For these and other reasons, the court found the Town’s reclassification order
supported by the evidence, and it thus affirmed the order. 

¶ 26.        
On appeal, petitioners reiterate their assertion that the Town should
have been required to restore the road to its pre-2001 condition before it could
reclassify the road.  It identifies findings made by the Town that it
argues rest on the Town’s “conscious dereliction” of its maintenance
duties.  We reject this argument for the reasons stated above.  There
is no legal requirement that a town must conduct all necessary maintenance
before it can reclassify its roads, and there is no showing that the Town acted
unreasonably or arbitrarily in not conducting maintenance between 2001 and
2010.  The applicable standard for road reclassification is whether the
Selectboard determines that “the public good, necessity, and convenience of the
inhabitants of the municipality” require reclassification, 19 V.S.A.
§ 710, and whether the Selectboard’s decision to this effect is supported
by “any competent evidence,” Ketchum, 2011 VT 49, ¶ 14.  Given
the history in this case, the Selectboard properly considered the existing
condition of the road in its reclassification decision.  

¶ 27.        
Petitioners next assert that the reasons identified by the Town for its
decision lacked evidentiary support or rested on inaccurate assumptions. 
Petitioners attack each of the reasons offered by the Town in support of its
decision, often challenging the Town’s assessment of the evidence.  Before
addressing these arguments, we note the limited nature of our review.  As
we have explained, Rule 75 is the “modern equivalent” of extraordinary relief,
such as certiorari.  In re Petition of Town of Bennington, 161 Vt.
573, 573-74, 641 A.2d 1331, 1332 (1993) (mem.).  Our review of evidentiary
questions is limited to “whether there is any competent evidence to justify the
adjudication.”  Ketchum, 2011 VT 49, ¶ 14 (quotation omitted).
 

¶ 28.        
With this standard in mind, we conclude, as did the trial court, that
there is competent evidence to support the Town’s decision to reclassify the
road.  First, the Selectboard considered evidence of the cost of
maintaining the road.  A letter from a former Selectboard member suggested
that the cost of restoring the segment to the quality of a road—including
culverts, bridges, and gravel—could easily exceed $100,000.  This letter,
along with evidence of beaver activity, wash-out and erosion in the road, and
critical wildlife in the surrounding wetland area, was sufficient for the
Selectboard to conclude that the work necessary to restore and maintain the
road as a Class 4 highway would be significant.  

¶ 29.        
Second, the Selectboard had ample evidence to support its conclusion
that the renamed Crane Brook Trail should be reserved for conservation and
recreational purposes.  The Underhill Conservation Commission provided a
history of community support for reclassifying the segment to a town trail,
dating back to the 2001 effort, and an even longer-term Town focus on
conserving the Crane Brook Conservation District surrounding the trail.  A
number of citizens recounted the history leading up to the Town’s 2001 decision
to reclassify the road as a trail and described recreational uses of the trail
since that time.  If anything, the arguments for reclassifying the road
were much stronger in 2010, the area having reverted to the natural state by
that time.

¶ 30.        
Third, the Selectboard had evidence from which it could infer that the
area surrounding the Crane Brook Trail, having reverted to its natural statute,
was a wetland, a critical wildlife habitat, a deer wintering area, and an
important site for local students to learn about environmental
stewardship.  The Town’s 2002 ordinance expressly restricting the use of
motor vehicles on the Crane Brook Trail for the purpose of preventing
environmental damage and pollution on the trail reinforces the notion that the
Town linked motor vehicle traffic to unwanted environmental impacts, and
numerous commenters expressed concern about the environmental impact of
returning the trail to road conditions and allowing car traffic on the trail.

¶ 31.        
Fourth, the Selectboard considered the minimal importance of the segment
as a through-road, noting that it had not been used as such for a considerable
period of time.  Although it did not identify a specific date when
vehicular traffic ceased, the record supports the conclusion that over time the
condition of the segment reverted to a natural state that did not allow for
through traffic.

¶ 32.        
Fifth, the Selectboard ensured that abutting landowners would have
access to their parcels.  In short, the Selectboard had evidence that
reclassification of the segment as a trail was consistent with the Underhill
Town Plan with respect to road maintenance, environmental quality, development,
flood plain and flood hazard mitigation, and recreation.  On the basis of
the above, we cannot agree with petitioners that the Selectboard’s decision was
not supported by adequate reasoning or evidence.  The findings in support
of the Town’s reclassification decision in this case are far more extensive
than the findings supporting the trial court’s override of a town’s
reclassification decision that we found to be inadequate in the King
case, relied upon by petitioners.  2005 VT 86, ¶¶ 5-6.  

¶ 33.        
Finally, petitioners emphasize that throughout its reclassification
order the Selectboard improperly described a decision to maintain the road as a
Class 4 road as an “upgrade” when, in fact, the road was legally designated
as a Class 4 road and the Town was seeking to downgrade it.  We are not
persuaded that this semantic difference is substantive.  The circumstances
of this case are unique.  Pursuant to the superior court’s ruling that the
2001 reclassification was ineffective, as a matter of law the segment at the
time of the 2010 reclassification order consisted of a Class 3 and Class 4
road.  But the practical reality on the ground was that it had long since
reverted to trail-like conditions, and was perceived as a trail by townspeople
as a result of the later-invalidated 2001 reclassification effort. 
Whether the decision here was to “downgrade” the legal status of the segment,
or to not upgrade it, it was amply supported by the Selectboard’s findings and
the evidence upon which it relied.

Affirmed.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
Throughout the proceedings below and the parties’ briefs on appeal, both
parties characterized the proceedings below as a “reclassification” of Class 3
and Class 4 highway segments to the status of trails, rather than as a
discontinuance of a town highway and designation of a trail in the right-of-way. 
19 V.S.A. § 775.  We have addressed the arguments as framed.





[2]
 The superior court subsequently denied the Town’s motion for summary
judgment in the maintenance case and instructed the County Road Commissioners
to prepare a report pursuant to 19 V.S.A. § 973.  The County Road
Commissioners completed that report on June 26, 2013, and recommended certain
repairs to the trail portion of TH 26.  The Town has appealed that report
to the superior court.  The County Road Commissioners’ report is not a
final judgment, and does not affect our analysis.





[3] 
There is no indication that, following our decision in Ketchum and the
trial court’s indication that it would treat this case as a Rule 75 appeal,
petitioners pursued their argument that their appeal was taken under Rule 74,
rather than Rule 75, or that a panel of commissioners should be appointed under
19 V.S.A. § 741.  To the contrary, petitioners cited Ketchum
and asserted in their “Supplemental Memorandum in Support of Their Appeal” that
their appeal was brought pursuant to Rule 75, with the superior court’s review
limited to that set forth above. 





[4]
 The court’s record did not include a transcript or minutes of the
Selectboard’s site visit nor the public hearing preceding its reclassification
order.  The court relied on written communications submitted to the
Selectboard that do appear in the record.





[5] 
On appeal, petitioners reiterate their suggestion that the Selectboard’s stated
justification for reclassification is a pretext for improper personal motives,
and that some elected officials are pursuing a personal agenda in reclassifying
the segment to increase their own property values.  They do not provide
specifics, nor do they explain how the trial court’s rejection of this argument
is unsupported by the record.  We cannot conclude that the trial court’s
decision on this point is an abuse of discretion.  See In re S.B.L.,
150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988) (appellant bears burden of
demonstrating “how the lower court erred warranting reversal,” and this Court
“will not comb the record searching for error”).