2013 VT 72

## David Demarest and Jeffrey Moulton v. Town of Underhill

[87 A.3d 439]

No. 12-403

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed September 27, 2013
Motion for Reargument Denied October 31, 2013

---

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Plaintiffs-Appellants.

*John W. O'Donnell* of *Bergeron, Paradis & Fitzpatrick LLP*, Burlington, for Defendant-Appellee.

¶ 1. **Robinson, J.** Petitioners appeal from the trial court's 2012 order upholding the Town of Underhill's decision to reclassify a segment of Town Highway 26 (TH 26) from a Class 3 and Class 4 highway to a legal trail. Petitioners argue that: the trial court should have appointed commissioners to make a report concerning

the reclassification decision pursuant to 19 V.S.A. §§ 740-743 rather than reviewing the reclassification decision on the record pursuant to Vermont Rule of Civil Procedure 75; the court erred in declining to stay the appeal pending resolution of a related action concerning maintenance of the segment; and the evidence did not support the Town's reclassification ruling. We affirm.

¶ 2. Petitioners own real property adjacent to TH 26. In 2001 the Underhill Selectboard reclassified portions of TH 26 as a legal trail.[1] At the time, some of the roadway in question was designated as a Class 3 highway, and some was a Class 4 highway. To that end, the Selectboard provided the statutorily required public notice, conducted a site visit, conducted a public hearing, and voted to order the reclassification. The Town complied with all of the statutory procedures for reclassifying a road, except that it failed to formally record the reclassification order in the land records. In 2002, after public notice and an informational meeting, the Selectboard adopted a Trail Travel Ordinance for Crane Brook Trail — the name of the trail created by the purported 2001 reclassification. The ordinance contemplated that the trail would be used for recreational purposes. After the 2001 reclassification process, the Town stopped maintaining the purportedly reclassified segment of TH 26 as a road.

¶ 3. In the years following the purported 2001 reclassification, the condition of the segment of old TH 26 at issue here deteriorated significantly. In the absence of culvert maintenance and drainage management, beaver ponds by the road expanded causing wash-out and erosion in portions of the segment.

¶ 4. In February 2010, interested parties filed suit in superior court pursuant to 19 V.S.A. § 971 seeking an order requiring that the Town repair and maintain the disputed segment (the maintenance case). Although towns are not responsible for maintaining trails, *In re Town Highway No. 20 of Town of Georgia*, 2003 VT 76, ¶ 3 n.*, 175 Vt. 626, 834 A.2d 17 (mem.) (citing 19 V.S.A. § 302(a)(5)), the petitioners argued that the Town's 2001 reclassification attempt was ineffective, and that the Town thus had an obligation to maintain the road. 19 V.S.A. §§ 970-979.

---

[1] Throughout the proceedings below and the parties' briefs on appeal, both parties characterized the proceedings below as a "reclassification" of Class 3 and Class 4 highway segments to the status of trails, rather than as a discontinuance of a town highway and designation of a trail in the right-of-way. 19 V.S.A. § 775. We have addressed the arguments as framed.

¶ 5. The Town defended that action, but in March 2010 it also initiated a new reclassification proceeding in light of the challenge to the legal sufficiency of the 2001 reclassification. The Selectboard provided notice, conducted a site visit, solicited written comments on the reclassification question, and held a hearing to take testimony from interested persons. In a June 2010 "Order of Classification," the Selectboard determined that:

> TH 26 should now consist of three separate segments: The first segment shall extend, as before, from Pleasant Valley Road north to the Town Garage and shall be maintained as a Class 3 highway; the second shall be a legal trail extending from the Town Garage north to a point just south of the current driveway access to TH 26 from the property now owned by David Demarest, and; the third remaining segment shall extend from the northern end of the legal trail north to Irish Settlement Road, shall be known as Fuller Road, and shall be maintained as a Class 4 highway.

The order asserted that the reclassification action "was taken for the public good, convenience and necessity of the inhabitants of the Town of Underhill," and the Selectboard identified sixteen reasons in support of its decision. This 2010 reclassification order is the subject of this appeal.

¶ 6. Petitioners appealed the Selectboard's reclassification order to the superior court, ostensibly pursuant to V.R.C.P. 74 and 19 V.S.A. § 740. Section 740(a) provides, in relevant part, that:

> [w]hen a person owning or interested in lands through which a highway is laid out, altered, or resurveyed by selectboard members, objects to the necessity of taking the land, or is dissatisfied with the laying out, altering, or resurveying of the highway, or with the compensation for damages, he or she may appeal, in accordance with Rule 74 of the Vermont Rules of Civil Procedure, to the superior court . . . .

Petitioners argued that the reclassification of TH 26 constituted an "alteration," the statutory procedure for reviewing "alterations" of highways thus applied, and that therefore the court should appoint "three disinterested landowners as commissioners, to inquire into the convenience and necessity of the proposed high-

way, and the manner in which it has been laid out, altered, or resurveyed, and . . . as to the amount of damages sustained by the appellant." 19 V.S.A. § 741. Initially the parties apparently agreed that the reclassification was an "alteration" of the road such that 19 V.S.A. § 740 governed the appeal; the trial court expressed skepticism about the parties' shared approach, but reluctantly agreed to proceed on that basis initially.

¶ 7. Petitioners requested that the court stay proceedings in the reclassification case pending resolution of the maintenance case. They argued that the condition of the disputed segment had deteriorated significantly since the Town stopped maintaining it as a road after the 2001 reclassification effort, and the state of the segment and the cost of restoring it were substantial factors underlying the Selectboard's reclassification decision. In the maintenance case, the petitioners sought an order requiring the Town to restore the disputed segment to the condition of a road. Because the court's decision in the maintenance case could lead to restoration of road-level conditions on the segment, thus undercutting the rationale in support of the reclassification, petitioners argued that the court should decide the maintenance case first. The superior court concluded that the issues presented in the two cases were distinct and denied petitioners' motion for a stay.

¶ 8. While the appeal of the Town's 2010 reclassification decision was pending, in May 2011, the superior court ruled in the context of the maintenance case that the 2001 reclassification effort was, in fact, ineffective because the Town had failed to record the reclassification order in the town land records. The court then stayed further action on the maintenance case pending resolution of the reclassification appeal.[2]

¶ 9. Also while petitioners' appeal was pending, this Court issued *Ketchum v. Town of Dorset*, 2011 VT 49, 190 Vt. 507, 22 A.3d 500 (mem.). In *Ketchum*, we rejected the argument that reclassification constitutes an "alteration" under 19 V.S.A. § 740, and consequently, rejected the argument that an appeal of a

---

[2] The superior court subsequently denied the Town's motion for summary judgment in the maintenance case and instructed the County Road Commissioners to prepare a report pursuant to 19 V.S.A. § 973. The County Road Commissioners completed that report on June 26, 2013, and recommended certain repairs to the trail portion of TH 26. The Town has appealed that report to the superior court. The County Road Commissioners' report is not a final judgment, and does not affect our analysis.

reclassification decision requires the appointment of a panel of commissioners to review a town's reclassification decision. *Id.* ¶ 12. We held that "review by certiorari through [V.R.C.P.] 75 provided the proper procedure for appeal to the superior court." *Id.* ¶ 14. In such cases, the superior court conducts an on-the-record review to determine if there was adequate evidence to support the town's decision. *Id.* ¶ 16; see also *id.* ¶ 14 (noting that in Rule 75 appeals "jurisdiction is usually confined to reviewing questions of law, and consideration of evidentiary questions is limited to determining whether there is *any* competent evidence to justify the adjudication" (quotation omitted and emphasis added)).

¶ 10. In light of our decision in *Ketchum*, the superior court ruled that the reclassification appeal was subject to an on-the-record review and the court thus did not refer the matter to a panel of commissioners. In a twelve-page decision that surveyed the available record evidence, the court concluded that the Town's 2010 reclassification order was supported by the evidence.

¶ 11. On appeal, petitioners argue that the superior court erred in treating the appeal as a Rule 75 appeal, rather than a de novo proceeding requiring the appointment of commissioners as set forth in 19 V.S.A. §§ 740-741. They further argue that the court erred in denying their motion for a stay so they could pursue the maintenance case first. Finally, they challenge the merits of the superior court's decision, arguing that the Town improperly created the conditions that supported the reclassification by failing to maintain the segment, and that the record evidence did not support the Selectboard's decision.

## I.

¶ 12. Petitioners argue that the trial court should have treated this as a Rule 74 appeal, subject to the procedures set forth in 19 V.S.A. §§ 740-743 (setting forth procedure for reviewing challenges to taking of land, or laying out, altering, or resurveying of highway). We review this legal question de novo. See *In re Town Highway No. 20*, 2012 VT 17, ¶ 61, 191 Vt. 231, 45 A.3d 54. We recently held in *Ketchum* that the term "altering" in § 740 does not encompass reclassification, and rejected the argument that a town's decision to reclassify a Class 3 highway as Class 4 was subject to review pursuant to § 740. Petitioners try to distinguish this case by pointing to a footnote in *Town Highway No. 20* in which we suggested that a town's reclassification of Class 4 roads

is subject to a different statutory procedure than the reclassification of other roads. See 2012 VT 17, ¶ 61 n.9. In that footnote, we cited to 19 V.S.A. § 310(b), which provides that "Class 4 highways may be maintained to the extent required by the necessity of the town, the public good and the convenience of the inhabitants of the town, or may be reclassified using the same procedures as for laying out highways and meeting the standards set forth in [19 V.S.A. § 302]." Because "nearly all" of the road at issue here was a Class 4 road, because the reclassification of Class 4 roads follows the same procedure as laying out of highways, and because the laying out of a highway is appealable pursuant to the procedure in 19 V.S.A. § 740, petitioners argue that the procedure in 19 V.S.A. § 740 governs this appeal of the reclassification of a Class 4 road. Petitioners also point to pre-*Ketchum* cases in which reclassification decisions had been reviewed using the three-commissioner process rather than on-the-record review.

¶ 13. ■ Putting aside questions of preservation,[3] we find petitioners' argument without merit. Our holding in *Ketchum* makes clear that reclassification decisions do not fall within 19 V.S.A. § 740, and that appeals of those decisions to the superior court are governed by Rule 75. See also *In re Town Highway No. 20*, 2012 VT 17, ¶ 61 (citing *Ketchum* for the proposition that "altered" in § 741 no longer includes reclassification). Our core holding in *Ketchum* was not specific to any particular class of road; it flowed from the plain language of 19 V.S.A. § 740, which clearly did not include "reclassification" as among the actions subject to its reach. Because we concluded that 19 V.S.A. § 740 did not apply to reclassification decisions, we held that an appeal of such a decision was subject to Rule 75 on-the-record review.

¶ 14. ■ The appellants in *Ketchum*, like petitioners here, pointed to several pre-*Ketchum* cases in which reclassification decisions had been reviewed using the three-commissioner process set forth in 19 V.S.A. § 741. In *Ketchum*, we explained that in

---

[3] There is no indication that, following our decision in *Ketchum* and the trial court's indication that it would treat this case as a Rule 75 appeal, petitioners pursued their argument that their appeal was taken under Rule 74, rather than Rule 75, or that a panel of commissioners should be appointed under 19 V.S.A. § 741. To the contrary, petitioners cited *Ketchum* and asserted in their "Supplemental Memorandum in Support of Their Appeal" that their appeal was brought pursuant to Rule 75, with the superior court's review limited to that set forth above.

those cases the issue of the proper scope of the superior court's appellate jurisdiction had not been raised, and thus, those cases were not controlling. See 2011 VT 49, ¶ 9 n.* (distinguishing *Hansen v. Town of Charleston*, 157 Vt. 329, 597 A.2d 321 (1991), and *King v. Town of Craftsbury*, 2005 VT 86, 178 Vt. 623, 883 A.2d 771 (mem.)). We added an observation that our prior decision in *Hansen* was distinguishable from *Ketchum* because our analysis in *Hansen* relied on language in 19 V.S.A. § 310(b), which stated that reclassification of a Class 4 highway was to be done "using the same procedures as for laying out highways." *Id.* Petitioners' argument that § 310(b) requires that reclassification of Class 4 roads be conducted using the procedures for laying out of highways, and that those procedures call for review by court-appointed commissioners pursuant to 19 V.S.A. §§ 740, 741, relies on this remark. Section 310(b) does not help petitioners in this case. We recently reiterated a point we made more than a decade ago: § 310(b) does not apply to a reclassification of a Class 4 road to a trail. See *In re Town Highway No. 20*, 2012 VT 17, ¶ 61 n.9 (discussing *Hansen*, 157 Vt. 329, 597 A.2d 321); see also *Town of Calais v. Cnty. Road Comm'rs*, 173 Vt. 620, 623, 795 A.2d 1267, 1270 (2002) (mem.) (noting that the Legislature had defined a trail as "not a highway," and there are no standards for trails in the section for laying out highways referenced in § 310(b)). We need not revisit the question of whether the procedures for laying out highways apply to upward reclassifications of Class 4 roads; because the reclassification at issue here is from a Class 4 road to a trail, § 310(b) does not apply.

## II.

¶ 15. Petitioners argue that the trial court should have stayed consideration of the reclassification appeal until the maintenance case was resolved. They reason that the 2010 reclassification decision should occur in the context of what the road conditions *would have been* had the Town not breached its maintenance obligations and allowed the road to deteriorate. Otherwise, they argue, the Town is simply "parlay[ing] its breach of duty into a justification for municipal action manifestly designed to ratify its breach after the fact."

¶ 16. In a June 2012 ruling, the trial court found no reason to postpone consideration of the instant case, finding no legal requirement that the road be brought back to its 2001 condition

before the court could consider the issue of reclassification. Given the nature of its review under Rule 75, the court explained, the only evidence to be considered by the court was the record of the Selectboard's decisionmaking, which was already complete.

¶ 17. In the context of the maintenance case, moreover, the trial court explained that the Town has broad discretion in maintaining Class 4 roads. See 19 V.S.A. § 310(b) ("Class 4 highways may be maintained to the extent required by the necessity of the town, the public good and the convenience of the inhabitants of the town . . . ."); see also *Town of Calais*, 173 Vt. at 622-23, 795 A.2d at 1270 ("The only rational construction of the statutes, one fully consistent with their broad language, is that the commissioners, as well as the superior court and this Court, must review a selectboard's decisions on repair of a class 4 road consistent with the broad new power the Legislature gave the selectboard in this area." (footnote omitted)). While the Town's 2001 reclassification failed due to a recording mistake, the record of public notice and public meetings clearly established the Town's decision, taken in a public manner and after receiving comment from opponents, to stop spending money to maintain the portion of the road in question. The trial court recognized that the Town's discretion was not boundless, and that it could not act in an arbitrary or discriminatory manner, but found no record evidence that would support a finding of arbitrary or discriminatory decisionmaking on the part of the Town. The court explained that the Legislature had afforded broad discretion to municipalities with respect to their decisions about funding road maintenance, and the municipality in this case had decided to spend its road budget elsewhere. That decision was subject to review by the Road Commissioners, but was not before the court in the reclassification appeal.

¶ 18. We find no abuse of discretion in the court's denial of petitioners' request for a stay. Petitioners did not challenge the Town's maintenance decision until 2010 — long after the deterioration in the road due to the lack of maintenance had actually occurred. Now they ask the courts to undo the consequences of nearly a decade of unappealed maintenance decisions before considering the Town's reclassification decision. As stated by the trial court, there is no legal requirement that the road be brought back to its 2001 condition before the Town can undertake reclassification. See 19 V.S.A. §§ 708-710 (describing method of initiating reclassification process).

¶ 19. Nor is there any evidence that the Town acted arbitrarily in deciding to stop maintaining this road. On the facts of this case, it was appropriate for the Town to base its 2011 reclassification decision on the conditions then existing. The court in the maintenance case likewise reasonably stayed that case pending resolution of the reclassification case, recognizing that the reclassification could render the maintenance issue moot. See 19 V.S.A. § 310(c) ("A town shall not be liable for construction, maintenance, repair, or safety of trails."). Petitioners describe a scenario in which a town might deliberately evade its minimum maintenance responsibilities for the purpose of creating new conditions on the ground to support a reclassification decision, rather than simply undertaking the reclassification in the first instance. The record does not support any suggestion that such a hypothetical describes this case.

## III.

¶ 20. On the merits, petitioners argued below that, in reaching its decision, the Town relied on its own neglect and failure to properly maintain the road over the years to support its reclassification decision. They also asserted that the Town failed to explain how it weighed the evidence and reached its conclusion, and that the Town's decision is arbitrary and capricious because the Town did not explain why it chose reclassification over preserving the segment as a Class 4 highway. Additionally, petitioners argued that there was inadequate evidence to support the Town's decision.

¶ 21. ██ As the superior court explained, "[t]he standard applicable in road reclassification cases is whether 'the public good, necessity and convenience of the inhabitants of the municipality require the highway to be . . . reclassified as claimed in the petition.'" *Hansen*, 157 Vt. at 335, 597 A.2d at 324 (quoting 19 V.S.A. § 710). Looking to case law, the court reasoned that the Town could properly consider the cost of repairing and maintaining TH 26 in reaching its reclassification decision. The fact that the road was in disrepair was material to that decision. If the state of disrepair was caused by the Town's neglect of maintenance, the citizens had a statutory mechanism to correct the problem. See, e.g., 19 V.S.A. § 971. The court explained, though, that there might be policy reasons underlying the neglect of

maintenance, and those reasons could potentially support a different proceeding, namely, a reclassification proceeding. The court could find no authority for the proposition that where a town's decisions left a town highway in disrepair, the town was precluded from reclassifying the road.

¶ 22. With respect to the evidentiary support for the Town's findings and its ultimate decision, the superior court thoughtfully reviewed the available record evidence.[4] The court concluded that ample evidence supported the Town's designation of the Crane Brook Trail for recreational use, and found ample evidentiary support for the Town's finding that the "trail segment in its present condition is inadequate for safe travel and would require significant expenditures to upgrade and maintain even as a Class 4 highway." With respect to the Selectboard's findings concerning the environmental impact associated with the reclassification decision, the court described evidence of the environmental sensitivity of the land in question, but concluded that there was no actual evidence that a Class 4 highway would have a more severe impact with respect to these factors than a trail. The court did find some support in the record for the conclusion that the road's classification would affect surrounding development that would, in turn, affect the natural resources in the area, and concluded that decisionmaking on this basis was not irrational or arbitrary.

¶ 23. The court also rejected petitioners' assertion that the Selectboard failed to explain how it weighed the evidence and reached its conclusion. The court found the rationale for the Selectboard's action sufficiently apparent from the findings in the classification order. Even putting aside the questions about the environment and recreation, it found that the Selectboard could reasonably reach its conclusions based solely on its findings about the high cost of the work to repair and maintain TH 26, and the limited benefits of doing so.

¶ 24. With respect to access, the court noted that the Town found that all landowners abutting the disputed segment had access to their properties from town highways other than TH 26, and that the Selectboard took the additional step of adjusting the

---

[4] The court's record did not include a transcript or minutes of the Selectboard's site visit nor the public hearing preceding its reclassification order. The court relied on written communications submitted to the Selectboard that do appear in the record.

length of the legal trail so that petitioner Demarest's driveway would connect to the Class 4 portion of TH 26.

¶ 25. Finally, the court rejected petitioners' assertion that the Selectboard's stated justification for reclassifying TH 26 might be a pretext for improper personal reasons for doing so. Specifically, petitioner Demarest suggested that some elected officials had been motivated to reclassify the segment in an attempt to increase personal property values. Petitioners maintained that certain residents in the area had benefitted, while petitioner Demarest had suffered significant costs. The court found no evidence of malicious conduct, and stated that petitioner Demarest's allegations to the contrary were not supported by the record. The fact that the Town's decision negatively affected petitioner Demarest did not by itself demonstrate animus against him or favoritism for others. The court found the instant case like *Ketchum* in that the Selectboard, faced with competing considerations, made a classification determination based on its findings.[5] For these and other reasons, the court found the Town's reclassification order supported by the evidence, and it thus affirmed the order.

¶ 26. ■ On appeal, petitioners reiterate their assertion that the Town should have been required to restore the road to its pre-2001 condition before it could reclassify the road. They identify findings made by the Town that they argue rest on the Town's "conscious dereliction" of its maintenance duties. We reject this argument for the reasons stated above. There is no legal requirement that a town must conduct all necessary maintenance before it can reclassify its roads, and there is no showing that the Town acted unreasonably or arbitrarily in not conducting maintenance between 2001 and 2010. The applicable standard for road reclassification is whether the Selectboard determines that "the public good, necessity, and convenience of the inhabitants of the municipality" require reclassification, 19 V.S.A. § 710, and whether

---

[5] On appeal, petitioners reiterate their suggestion that the Selectboard's stated justification for reclassification is a pretext for improper personal motives, and that some elected officials are pursuing a personal agenda in reclassifying the segment to increase their own property values. They do not provide specifics, nor do they explain how the trial court's rejection of this argument is unsupported by the record. We cannot conclude that the trial court's decision on this point is an abuse of discretion. See *In re S.B.L.*, 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988) (appellant bears burden of demonstrating "how the lower court erred warranting reversal," and this Court "will not comb the record searching for error").

the Selectboard's decision to this effect is supported by "any competent evidence," *Ketchum*, 2011 VT 49, ¶ 14. Given the history in this case, the Selectboard properly considered the existing condition of the road in its reclassification decision.

¶ 27. ■ Petitioners next assert that the reasons identified by the Town for its decision lacked evidentiary support or rested on inaccurate assumptions. Petitioners attack each of the reasons offered by the Town in support of its decision, often challenging the Town's assessment of the evidence. Before addressing these arguments, we note the limited nature of our review. As we have explained, Rule 75 is the "modern equivalent" of extraordinary relief, such as certiorari. *In re Town of Bennington*, 161 Vt. 573, 573-74, 641 A.2d 1331, 1332 (1993) (mem.). Our review of evidentiary questions is limited to "whether there is any competent evidence to justify the adjudication." *Ketchum*, 2011 VT 49, ¶ 14 (quotation omitted).

¶ 28. ■ With this standard in mind, we conclude, as did the trial court, that there is competent evidence to support the Town's decision to reclassify the road. First, the Selectboard considered evidence of the cost of maintaining the road. A letter from a former Selectboard member suggested that the cost of restoring the segment to the quality of a road — including culverts, bridges, and gravel — could easily exceed $100,000. This letter, along with evidence of beaver activity, wash-out and erosion in the road, and critical wildlife in the surrounding wetland area, was sufficient for the Selectboard to conclude that the work necessary to restore and maintain the road as a Class 4 highway would be significant.

¶ 29. Second, the Selectboard had ample evidence to support its conclusion that the renamed Crane Brook Trail should be reserved for conservation and recreational purposes. The Underhill Conservation Commission provided a history of community support for reclassifying the segment to a town trail, dating back to the 2001 effort, and an even longer-term Town focus on conserving the Crane Brook Conservation District surrounding the trail. A number of citizens recounted the history leading up to the Town's 2001 decision to reclassify the road as a trail and described recreational uses of the trail since that time. If anything, the arguments for reclassifying the road were much stronger in 2010, the area having reverted to the natural state by that time.

¶ 30. Third, the Selectboard had evidence from which it could infer that the area surrounding the Crane Brook Trail, having reverted to its natural state, was a wetland, a critical wildlife habitat, a deer wintering area, and an important site for local students to learn about environmental stewardship. The Town's 2002 ordinance expressly restricting the use of motor vehicles on the Crane Brook Trail for the purpose of preventing environmental damage and pollution on the trail reinforces the notion that the Town linked motor vehicle traffic to unwanted environmental impacts, and numerous commenters expressed concern about the environmental impact of returning the trail to road conditions and allowing car traffic on the trail.

¶ 31. Fourth, the Selectboard considered the minimal importance of the segment as a through-road, noting that it had not been used as such for a considerable period of time. Although it did not identify a specific date when vehicular traffic ceased, the record supports the conclusion that over time the condition of the segment reverted to a natural state that did not allow for through traffic.

¶ 32. Fifth, the Selectboard ensured that abutting landowners would have access to their parcels. In short, the Selectboard had evidence that reclassification of the segment as a trail was consistent ʿwith the Underhill Town Plan with respect to road maintenance, environmental quality, development, flood plain and flood hazard mitigation, and recreation. On the basis of the above, we cannot agree with petitioners that the Selectboard's decision was not supported by adequate reasoning or evidence. The findings in support of the Town's reclassification decision in this case are far more extensive than the findings supporting the trial court's override of a town's reclassification decision that we found to be inadequate in the *King* case, relied upon by petitioners. 2005 VT 86, ¶¶ 5-6.

¶ 33. Finally, petitioners emphasize that throughout its reclassification order the Selectboard improperly described a decision to maintain the road as a Class 4 road as an "upgrade" when, in fact, the road *was* legally designated as a Class 4 road and the Town was seeking to downgrade it. We are not persuaded that this semantic difference is substantive. The circumstances of this case are unique. Pursuant to the superior court's ruling that the 2001 reclassification was ineffective, as a matter of law the segment at the time of the 2010 reclassification order consisted of

a Class 3 and Class 4 road. But the practical reality on the ground was that it had long since reverted to trail-like conditions, and was perceived as a trail by townspeople as a result of the later-invalidated 2001 reclassification effort. Whether the decision here was to "downgrade" the legal status of the segment, or to not upgrade it, it was amply supported by the Selectboard's findings and the evidence upon which it relied.

*Affirmed.*