NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 14

No. 2020-098

| | |
|---|---|
| David Demarest | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, Civil Division |
| | |
| Town of Underhill | September Term, 2020 |

Helen M. Toor, J.

Christopher D. Roy of Downs Rachlin Martin PLLC, Burlington, for Plaintiff-Appellant.

Joseph S. McLean of Stitzel, Page & Fletcher, P.C., Burlington, for Defendant-Appellee.


PRESENT: Robinson, Eaton, Carroll and Cohen, JJ., and Howard, Supr. J. (Ret.), Specially Assigned


¶ 1. **CARROLL, J.** Plaintiff David Demarest filed suit against the Town of Underhill, seeking a declaration that he had a right of vehicle access over a Town trail, and appealing the Selectboard's decision denying his request for highway access to a proposed new subdivision on his property. The superior court granted summary judgment in favor of the Town, concluding that plaintiff's request for declaratory relief was barred by claim preclusion and that the Town acted within its discretion in denying the permit. On appeal, plaintiff argues that the court erred in applying claim preclusion and that the Town exceeded its authority under the statute in denying his request for access. We affirm.

¶ 2.    The following facts were undisputed for purposes of summary judgment.  Plaintiff owns a 51.3-acre parcel of land adjacent to the former Town Highway (TH) 26.  The Town reclassified portions of TH 26 as a legal trail in 2001 and stopped maintaining the roadway at that time.  The Town initiated a new reclassification proceeding in 2010, after a suit was filed, that challenged the sufficiency of the 2001 reclassification and sought an order requiring the Town to maintain the roadway.  Plaintiff was involved in that suit.  The June 2010 Selectboard reclassification decision found that reclassification was for the public good and convenience and necessary for the Town's inhabitants.  The Town's reclassification resulted in TH 26 being divided into three segments: (1) New Road, a class 3 town highway; (2) Fuller Road, a class 4 town highway, and (3) Crane Brook Trail, a legal trail, connecting New Road and Fuller Road.

¶ 3.    Plaintiff, and other landowners, appealed the Selectboard's reclassification decision under Vermont Rule of Civil Procedure 75.  The maintenance case was put on hold pending resolution of the reclassification appeal.  Ultimately, the superior court concluded that the Town's 2010 reclassification was supported by the evidence.  That case was appealed, and this Court affirmed, holding that the Selectboard's decision was supported by the evidence.  See Demarest v. Town of Underhill, 2013 VT 72, ¶¶ 26-32, 195 Vt. 204, 87 A.3d 439 (affirming Town's decision to reclassify road as trail).

¶ 4.    When plaintiff initially purchased his property in 2002, the Town approved the construction of a residence on the property.  The parties dispute whether access to the property was primarily by Fuller Road or New Road prior to the reclassification.  After the Town reclassified a portion of TH 26 as a trail, plaintiff's only highway access was by Fuller Road.  If plaintiff could use the trail to access New Road, he would have a more direct route to Underhill Center.

¶ 5.    In August 2015, plaintiff applied to the Town's Selectboard for highway access to a proposed new subdivision on his property.  He proposed that some of the lots would have access

2

by Fuller Road with the remaining lots to have vehicular access via the trail to New Road. The Selectboard denied the application in May 2016.

¶ 6. Plaintiff filed this suit, seeking a declaration that he had a right of vehicle access over Crane Brook Trail and appealing the denial of the permit. The parties cross-moved for summary judgment on different grounds. Plaintiff moved for summary judgment on the issue of whether he had a right of access over the trail. Plaintiff asserted that the topographical features of the property prevented interior vehicular access to the property from Fuller Road. The court found that plaintiff failed to support this assertion with exhibits or other evidence. The court denied plaintiff's request for summary judgment, concluding that plaintiff had not shown an inability to access the subdivision lots with an access road within the property that would connect to the current point of highway access on Fuller Road. The court explained that the designation of features and wetlands on the proposed subdivision map did not amount to undisputed evidence that the proposed lots could be accessed only by Crane Brook Trail.

¶ 7. The Town moved for summary judgment on the ground that plaintiff's claim was barred by res judicata. The Town argued that plaintiff should have litigated his right-of-access claim in one or more of the prior actions against the Town. See In re Town Highway 26, Town of Underhill, No. 2014-386, 2015 WL 2383677 (Vt. May 14, 2015) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo14-386.pdf [https://perma.cc/Q3TP-S8ZY] (dismissing as moot petitioners' claims that Town was required to maintain road); Demarest, 2013 VT 72, ¶ 5 (affirming Town's decision to reclassify segment of TH 26 to legal trail). The court concluded that plaintiff's prior Rule 75 appeal of the Town's reclassification decision could have included a claim for declaratory relief on the question of whether plaintiff had a statutory or common-law right of access using the trail to those portions of his property that could not reasonably be accessed from Fuller Road. The court found that the prior Rule 75 reclassification case involved substantially the same cause of action as the current case. The court

3

relied on the definition of "transaction" in the Restatement (Second) of Judgments § 24 (1982), as adopted by this Court in Faulkner v. Caledonia County Fair Ass'n, 2004 VT 123, ¶ 15, 178 Vt. 51, 869 A.2d 103. The court concluded that plaintiff's motive for challenging the Town's reclassification decision in the prior case was the same as the motivation in the current case: to allow plaintiff to use the trail to access New Road. Because the Rule 75 reclassification was a final judgment on the merits between the same parties and the right of access could have been fully litigated in that proceeding, the court concluded that claim preclusion applied.

¶ 8. Plaintiff's second claim asserted that the Town Selectboard erred in denying his request for a so-called curb-cut permit onto New Road via Crane Brook Trail. The Selectboard denied the request on the ground that plaintiff's application required vehicular access across Crane Brook Trail and it was not in the Town's best interests to allow the trail to be used as a roadway. Before the trial court, plaintiff argued that under 19 V.S.A. § 1111(a), the Town could consider only limited factors, including safety and public investment, and the Town improperly considered environmental and hydrological factors. The trial court concluded that the Selectboard acted within its authority to deny access to New Road when such access depended on use of a trail over which vehicular traffic was prohibited. Having resolved both claims in the Town's favor, the court entered judgment for the Town. Plaintiff filed this appeal.

¶ 9. On appeal, plaintiff argues that the superior court erred in (1) concluding that claim preclusion barred him from pursuing his right-of-access claim, and (2) affirming the Selectboard's denial of his request for an access permit.

¶ 10. "We review summary judgment decisions de novo, applying the same standard of review as that applied by the trial court." In re Miller Subdivision Final Plan, 2008 VT 74, ¶ 8, 184 Vt. 188, 955 A.2d 1200. Summary judgment will be granted when there are no disputes of material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(a).

4

## I. Claim Preclusion

¶ 11. We first address the question of whether claim preclusion bars plaintiff from pursuing his right-of-access claim in this proceeding. Claim preclusion "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." Berlin Convalescent Ctr., Inc. v. Stoneman, 159 Vt. 53, 56, 615 A.2d 141, 143 (1992) (quotation omitted). It applies to claims that were actually litigated and those that "should have been raised in previous litigation." Id. at 56, 615 A.2d at 143-44 (quotation omitted). The purpose of claim preclusion is to advance

> the efficient and fair administration of justice because it serves (1) to conserve the resources of courts and litigants by protecting them against piecemeal or repetitive litigation; (2) to prevent vexatious litigation; (3) to promote the finality of judgments and encourage reliance on judicial decisions; and (4) to decrease the chances of inconsistent adjudication.

Faulkner, 2004 VT 123, ¶ 9 (quotation omitted). Claim preclusion does not depend on "the equities of a particular case." Id. ¶ 10. The determination of whether claim preclusion applies is a question of law that we review de novo. Id. ¶ 5.

¶ 12. Here, the question is whether claim preclusion prevents plaintiff from pursuing his declaratory-judgment action, which seeks to establish a common-law or statutory right of access over Crane Brook Trail. For claim preclusion to apply, there must be a final judgment that involved the same parties, subject matter, and cause of action. Id. ¶ 8. There is little dispute over some elements. In Demarest v. Town of Underhill, 2013 VT 72, there was a final judgment, and both plaintiff and the Town were parties to that action. The subject matter was the same. The main issue of dispute is whether the causes of action "in both matters are the same or substantially identical." Faulkner, 2004 VT 123, ¶ 8.

¶ 13. "In determining whether two causes of action are sufficiently similar for claim preclusion purposes, this Court has focused on whether the same evidence will support both of

5

them." Id. ¶ 11. This approach is consistent with the standard used in the first Restatement of Judgments, which deems causes of action the same for claim preclusion " 'if the evidence needed to sustain the second action would have sustained the first action.' " Id. ¶ 11 (describing Court's earlier approach to determining whether two causes of action are sufficiently similar for claim-preclusion purposes and quoting Restatement (First) of Judgments § 61 (1942)). In Faulkner, this Court adopted the broader approach taken by the Restatement (Second) of Judgments, which contains a transaction-based definition. 2004 VT 123, ¶¶ 12-15. Under this approach, the scope of the transaction is determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(2) (1982). A second action is barred even where it "will include 'evidence or grounds or theories of the case not presented in the first action, or . . . remedies or forms of relief not demanded in the first action.' " Faulkner, 2004 VT 123, ¶ 14 (quoting Restatement (Second) of Judgments § 25).

¶ 14. Applying this test, we conclude that the claim here regarding plaintiff's reasonable and convenient access to his property involves the same set of facts as those relevant to the Rule 75 appeal in that the facts are related in time, space, origin, and motivation. Both cases originated with the Town's act of reclassifying a portion of TH 26 as a trail. This action gave rise to both the appeal of the classification decision and plaintiff's dispute over whether he was entitled to vehicle access across the new trail.

¶ 15. In addition, plaintiff's motivation for challenging the reclassification decision was the same as his motivation underlying his current request for a declaratory judgment. Plaintiff's concern has always been his access to his property via the trail. In the previous litigation, plaintiff challenged the Town's decision to reclassify portions of TH 26 as a legal trail, arguing that the decision left his property without sufficient road access. Demarest, 2013 VT 72, ¶ 5 (affirming

6

Town's decision to reclassify segment of TH 26 as legal trail).  This Court's decision on appeal noted that the Town had addressed this issue and had

> found that all landowners abutting the disputed segment had access to their properties from town highways other than TH 26, and that the Selectboard took the additional step of adjusting the length of the legal trail so that petitioner Demarest's driveway would connect to the Class 4 portion of TH 26.

Id. ¶ 24; see also id. ¶ 32 (explaining that competent evidence supported Town's decision to reclassify road based in part on fact that Town's Selectboard had ensured that reclassification would provide landowners with access to their parcels).  In the current case, plaintiff again argues that he has insufficient access by other means and therefore must be allowed to use the legal trail portion of former TH 26.

¶ 16.    Finally, treating these cases as one unit conforms to the parties' expectations.  It is evident from the record that the Town and plaintiff understood that plaintiff's objection to the reclassification was linked to his desire to have access to his property via the former TH 26.  It would have made a compatible litigation unit to also address plaintiff's assertion that he had a right of access over the newly formed trail in the context of the Rule 75 appeal.  As the First Circuit has described, " 'where the witnesses or proof needed in the second action overlap substantially with those used in the first action, the second action should ordinarily be precluded.' "  Shelby v. Factory Five Racing, Inc., 684 F. Supp. 2d 205, 212 (D. Mass. 2010) (quoting Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 36 (1st Cir. 1996)).  Parties generally should expect that " 'a court will treat multiple causes of action as a single trial unit when the plaintiff has all the facts necessary to bring the second claim at its disposal before or during the pendency of the first.' "  Id. (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998))

¶ 17.    Plaintiff does not dispute that he could have included a claim for declaratory relief in the reclassification appeal in 2010 or that both suits involve a similar set of facts.  Instead, plaintiff argues that claim preclusion cannot apply in this case because (1) his right-of-access claim

7

did not accrue until there was a final determination in the Rule 75 case regarding the Town's reclassification; and (2) the prior action was a Rule 75 complaint for review of governmental action involving other parties and therefore his personal need for an injunction would have been inappropriately presented.

¶ 18. We reject plaintiff's argument that there was no justiciable controversy in 2010 and therefore the request for a declaratory judgment could not have been brought at that time. The Selectboard's July 2010 reclassification decision created a live controversy regarding plaintiff's right of access over the portion of TH 26 that was now classified as a trail. There was no need to wait until the challenges to the reclassification decision were fully litigated. For this reason, this situation is distinguishable from Kellogg v. Shushereba, 2013 VT 76, ¶ 31, 194 Vt. 446, 82 A.3d 1121, in which this Court concluded that claim preclusion did not bar defendant's unjust-enrichment claim because it did not accrue until after resolution of the first case. Plaintiff had all information necessary to bring his declaratory-judgment action at the time he challenged the Town's reclassification decision.

¶ 19. Plaintiff also contends that a Rule 75 appeal is a limited remedy and that it would have been improper for him to assert a declaratory-judgment claim in the context of that case. Plaintiff concedes that a declaratory-judgment claim could be added to a Rule 75 case but asserts that his request for declaratory relief was not a compulsory claim that he was required to bring in the Rule 75 appeal. In support, plaintiff cites Vermont Rule of Civil Procedure 18 on joinder of cases and remedies and cases addressing whether claim preclusion bars permissive counterclaims. See, e.g., Cold Springs Farm Dev., Inc. v. Ball, 163 Vt. 466, 473, 661 A.2d 89, 93 (1995) (explaining that "[c]laim preclusion applies to compulsory counterclaims, not permissive ones"). The important distinction between this case and the cases involving counterclaims or cross-claims is that plaintiff's claim for declaratory relief would have been an additional claim and not a counterclaim or cross-claim in the Rule 75 action. Claim preclusion bars claims that were or

8

should have been brought. <u>Faulkner</u>, 2004 VT 123, ¶ 8. Plaintiff's labeling of his declaratory judgment claim as permissive does not alter the analysis set forth above. The declaratory-judgment claim asserting a right of access over the trail is barred because it should have been brought in the first suit given that both claims stemmed from the same transaction.[1] See <u>Iannarone v. Limoggio</u>, 2011 VT 91, ¶ 14, 190 Vt. 272, 30 A.3d 655 (explaining that to determine what constitutes the same cause of action this Court takes broad approach and requires " 'plaintiff to address in one lawsuit all injuries emanating from all or any part of the transaction, or series of connected transactions, out of which the action arose' " (quoting <u>Faulkner</u>, 2004 VT 123, ¶ 12)).

¶ 20.    Plaintiff also argues that claim preclusion does not apply given the nature of the prior action. The Rule 75 appeal challenged the Town's roadway reclassification, which was an action affecting all residents of the Town, and therefore plaintiff asserts that it would not have been an appropriate forum to raise his individual claim regarding his right of access. There may be cases where an individual claim is not barred by res judicata based on the individual's participation in a prior group or class action. See, e.g., <u>Garcia v. Tyson Foods, Inc.</u>, 890 F. Supp. 2d 1266, 1268-70 (D. Kan. 2012) (holding that employee's action for retaliatory discharge was not barred by claim preclusion based on his participation as class member in Fair Labor Standards Act action because combining actions would not have conformed to parties' expectations and would have presented serious disadvantages). We need not decide the circumstances or scope of such a rule, however, because this situation did not involve a prior class or group action. Here, the Rule 75 case was not litigated on behalf of a group or class; rather, plaintiff litigated that action as an

---

[1] Plaintiff cites a decision by a Vermont superior judge for the proposition that a Rule 75 action does not bar a subsequent tort case. Obviously, that decision is not binding on this Court and has only minimal persuasive authority. In any event, the case is distinguishable because the decision in that case rested on the trial court's determination that the claims and parties were different.

individual. As explained in detail above, plaintiff could have sought declaratory relief in that case, and having failed to do so, is barred from now relitigating the issue.

## II. Denial of Preliminary Access

¶ 21. In addition to his claim for declaratory relief, plaintiff also appealed the Town's denial of his application for a curb-cut permit. Plaintiff argues that the Town overstepped its authority by requiring plaintiff to obtain preliminary approval from the Selectboard before applying to the Development Review Board (DRB) and in denying his preliminary access permit application. Because the Selectboard's denial rested on its decision not to allow plaintiff to have vehicular access across Crane Brook Trail, the Selectboard did not reach the question of whether to grant plaintiff a § 1111 permit. Therefore, we do not reach plaintiff's arguments focused on the scope of and Town's authority under the statute.

¶ 22. The parties stipulated to the following facts. As set forth above, plaintiff's land is adjacent to the corridor of former TH 26 and, after the Town reclassified portions of TH 26, a segment became a legal trail. The westerly boundary of plaintiff's property adjoins a southerly segment of Fuller Road and the northerly segment of Crane Brook Trail. The property is not adjacent to New Road. The Town has an ordinance requiring that when a project is under the jurisdiction of the DRB, the applicant must first seek the Selectboard's preliminary approval for access. Plaintiff sought approval for a subdivision on his land. Because the subdivision would require DRB approval, he first applied for a highway access permit or curb-cut to Fuller Road and to New Road via the trail. After an initial hearing, the parties agreed that plaintiff would revise his application. Plaintiff submitted a revised application in March 2016. The application included a memorandum arguing that the Selectboard had authority to allow vehicular access to property over a legal trail. The Selectboard conducted a hearing in April 2016 and issued a written decision in May 2016 denying the application.

10

¶ 23.    The Selectboard's written order included the following explanation of its decision. The Selectboard noted that the reclassification of a portion of TH 26 as a legal trail was based on several considerations, including that it had not been used a through-road for some time, beaver activity had caused significant washout and erosion issues, the trail was used for conservation and recreational purposes, the trail's condition made it inadequate for safe travel, the trail was on a wetland and in an environmentally sensitive area, and designating it as a trail was consistent with the Town plan.  The Selectboard concluded that considering the reasons for classifying the portion of TH 26 as a trail, it would not be appropriate or in the Town's best interests to allow the trail to be used for road access.  Therefore, the Selectboard denied plaintiff's request to have access to New Road via the trail.  Plaintiff appealed that decision to the civil division.

¶ 24.    Before the civil division, plaintiff argued that the Town acted beyond the authority granted to it under the statute by denying him access to his property via the trail based on environmental concerns and in requiring him to obtain approval from the Selectboard before making an application to the DRB.  The civil division entered judgment for the Town based on its construction of § 1111(b), which requires a permit from a municipality before constructing a driveway entrance to a town highway.  19 V.S.A. § 1111(a)(1) and (b).  The court interpreted the statute as allowing the Selectboard to consider more than just the items enumerated in the statute— safety of the traveling public, maintenance of reasonable levels of service, and protecting the public investment.  Id.  The court noted that § 1111(b) also requires permits to comply with local ordinances and regulations and that the Town here forbade vehicular traffic on Crane Brook Trail. The court concluded that the Selectboard acted within its authority in applying its own ordinances and denying access to New Road where such access would require vehicular use of a trail.

¶ 25.    The civil division also rejected plaintiff's argument that the Town exceeded the scope of its authority under § 1111 by requiring preliminary Selectboard approval of access permit applications prior to application to the DRB.  The court noted that although the statute did not

11

specifically grant the Town authority to review applications prior to DRB consideration, it also did not mandate town consideration only after DRB review.

¶ 26. On appeal, plaintiff first argues that the Town exceeded the scope of its municipal power under 19 V.S.A. § 1111 because the Town considered and rejected his application based on environmental factors, which plaintiff asserts are not within the scope of the statute. On appeal, we interpret the language of the statute without deference to the trial court. Northfield Sch. Bd. v. Washington S. Educ. Ass'n, 2019 VT 26, ¶ 13, 210 Vt. 15, 210 A.3d 460. We aim to give effect to the intent of the Legislature by first looking at the plain language used. Id.

¶ 27. The statute directs that any person seeking a right-of-way on a town or state highway must obtain a permit. 19 V.S.A. § 1111(a). The statute states that it is unlawful to develop or construct a driveway without a permit and that a permit must be in "compliance with all local ordinances and regulations relating to highways and land use." Id. § 1111(b). The statute further states that "reasonable entrance and exit to or from property abutting the highways" should not be denied and explains that determining reasonableness involves considering "safety, maintenance of reasonable levels of service on the existing highways, and protection of the public investment in the existing highway infrastructure." Id. Assessing reasonableness may also involve determining whether the access would comply with a regional plan, state agency plan, or municipal plan. Id.

¶ 28. In this case, plaintiff's application, although labeled as an application for a highway-access permit, really sought two separate decisions from the Town.[2] On its face, plaintiff's application sought permission to access New Road, a class 3 highway. The application

_____

[2] Plaintiff seems to acknowledge this reality, arguing on appeal that it was error for the Town to even consider access over the trail as part of the § 1111 analysis because the trail was not a Town highway and his right to access New Road was the sole question for § 1111 review. Plaintiff fails to acknowledge the corollary of this logic, however, that § 1111 was not relevant to the Selectboard's assessment of whether to grant vehicle access across the trail.

acknowledged, however, that plaintiff's property did not abut New Road and that plaintiff required permission to use Crane Brook Trail to connect to New Road. Section 1111 applies to "highways" and provides access "to or from property abutting the highways." By definition, Crane Brook Trail is not a highway. See 19 V.S.A. § 302(a)(5) ("Trails shall not be considered highways and the town shall not be responsible for any maintenance including culverts and bridges."). The question of vehicular access across Crane Brook Trail was a threshold issue because without permission to have vehicles travel on Crane Brook Trail, plaintiff could not connect to New Road, and his application for a § 1111 permit for New Road was moot.[3]

¶ 29. Before the Selectboard, plaintiff argued that the Town had discretion to grant plaintiff permission for vehicular access across the trail, citing portions of the Town's Road, Driveway, and Trail Ordinance, which provides, among other things, that the Selectboard can grant permission for private maintenance and repair of trails "under such conditions as [the Selectboard] deems appropriate." In assessing plaintiff's request, the Selectboard did not reach the question of whether it would be reasonable to give plaintiff access to New Road because it concluded that it would not allow vehicular traffic on the trail.

¶ 30. Plaintiff's assertion that the Town could not consider environmental factors to reach its decision misses the point.[4] The threshold issue before the Selectboard was whether to give plaintiff vehicular access across the trail, not whether to grant a permit under § 1111. The Selectboard acted well within its discretion under the Town Ordinance in considering a variety of factors, including environmental concerns, and denying plaintiff's request to use the trail as a roadway. The Selectboard explained that allowing vehicular travel on the trail would be

---

[3] We need not reach the question of whether § 1111 applies in a situation like this where the landowner is seeking a permit for highway access from another right-of-way and not directly from landowner's property.

[4] Given our resolution, we need not reach the question of whether a municipality could consider environmental factors in assessing whether to grant road access under § 1111.

inconsistent with the reasons the Town reclassified the roadway in the first place, which included beaver activity that caused washouts and erosion, the existence of a high-priority wildlife corridor, and the presence of a wetland and flood-hazard area in portions of the trail. The Selectboard also noted that Town voters supported using Crane Brook Trail for recreation and keeping the trail as a recreational trail was consistent with the Underhill Town Plan regarding road maintenance, environmental quality, development, flood-plain and flood-hazard mitigation, and recreation. In sum, the request was denied because allowing vehicular access across Crane Brook Trail was in direct conflict with the Town's prior prohibition of vehicles on the trail. As a result, the Town did not consider whether to grant roadway access under § 1111 to New Road.

¶ 31. Plaintiff next argues that the Town did not have authority to require him to apply for preliminary access approval under § 1111 before seeking DRB review of his subdivision application. The Town's ordinance in effect at the time of plaintiff's application states that when a project is under the jurisdiction of the DRB, the applicant must seek preliminary access approval from the Selectboard. Plaintiff relies on Dillon's Rule for the proposition that the Selectboard's actions exceeded the scope of its power under § 1111 to assess access permits. Dillon's Rule stems from the fact that "the power of the municipality is limited to what has been granted by the state." City of Montpelier v. Barnett, 2012 VT 32, ¶ 20, 191 Vt. 441, 49 A.3d 120. Under this principle, a municipality may exercise only those powers and functions "specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof." Id. (quotation omitted). Dillon's Rule is a "canon of construction requiring that grants of power to municipalities be read as limited to those clearly enumerated." Id.

¶ 32. Plaintiff asserts that requiring Selectboard review prior to the DRB process impinges on the DRB's authority to review subdivision applications under the criteria pertinent to subdivision review. See, e.g., 24 V.S.A. § 4418 (giving municipalities authority to establish

14

subdivision bylaws). Plaintiff claims that this contravenes the Legislature's overall approach to land regulation, which provides a careful and comprehensive regime.

¶ 33. We need not reach this question. As explained above, the Selectboard did not reach the question of whether to grant plaintiff an access permit to a town highway under § 1111. The Selectboard denied plaintiff's request to allow vehicular access across Crane Brook Trail pursuant to its discretion under the Town ordinance. Because § 1111 was not implicated in the Selectboard's decision, the ordinance requiring preliminary approval did not impact the decision on appeal and any decision regarding the Town's authority under the statute would amount to an advisory opinion.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 34. **ROBINSON, J., dissenting.** I cannot agree with the majority's conclusion that defendant forfeited his right to advance his private claims for access over the Crane Brook Trail to subdivided lots on his parcel by joining with neighbors in appealing the Town's decision to establish that trail in place of the public highway that previously traversed the same corridor. The two cases arise from distinct transactions that are separate in time and character and do not constitute a convenient trial unit, and treating them as a unit does not conform to the parties' expectations or business usage. For these reasons, I respectfully dissent from the majority's conclusion that plaintiff's claims in this case are precluded by the doctrine of claim preclusion.

¶ 35. In Demarest v. Town of Underhill (Demarest I), 2013 VT 72, 195 Vt. 204, 87 A.3d 439, plaintiff joined other interested landowners in appealing the Town of Underhill's decision to reclassify a segment of a town road from a class 3 and class 4 highway to a legal trail, designated

15

the Crane Brook Trail. The parties sought to reverse the reclassification decision, which would have the effect of restoring the road segments to their prior status as class 3 and class 4 highways. As a threshold matter, we affirmed the trial court's decision to treat landowners' appeal as a Rule 75, on-the-record appeal. Id. ¶ 13. On the merits, we affirmed the trial court's affirmation of the municipality's reclassification determination. Id. ¶ 28.

¶ 36. In this case, plaintiff appealed a decision of the Town Selectboard to deny his request for a permit for private access over the Crane Brook Trail to a number of newly subdivided lots and sought a declaration that he was entitled to such access. He asserted that topographical features and the presence of wetlands and wetland buffers prevented reasonable interior access to much of the subdivided property from the Fuller Road access to his property that was referenced in the 2010 reclassification decision.

¶ 37. Pursuant to the guidance of the Restatement (Second) of Judgments § 24(2), in deciding whether the 2013 judgment extinguished plaintiff's rights to pursue the claims in this action, we should conduct a pragmatic analysis, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

¶ 38. A comparison of the respective cases does not support the majority's conclusion that they arise from the same transaction. The subject matter of Demarest I was the legal status of the roadway, and the transaction giving rise to the appeal was the Town's 2010 reclassification decision. The subject matter of this case is the private right of access, or absence thereof, from newly subdivided lots on plaintiff's property over the newly created Crane Brook Trail to New Road. The transaction giving rise to plaintiff's claims here is his effort to subdivide his property and the Town's denial of his application for access over the Crane Brook Trail. The transactions underlying these cases are completely distinct in time and character.

16

¶ 39. The temporal gap between the underlying transactions is significant. The Selectboard issued the reclassification decision giving rise to Demarest I in 2010. Plaintiff sought access over Crane Brook Trail for subdivided lots on his property in 2015. On the majority's view, plaintiff was required, in 2010, to anticipate his future desire to subdivide, his inability to secure access from Fuller Road to all of his subdivided lots, and the Selectboard's denial of his application for access, and to litigate that denial six years before it occurred. I disagree with the majority's assertion that at the time plaintiff joined in the Rule 75 appeal of the Town's reclassification decision he "had all information necessary to bring his declaratory-judgment action." Ante, ¶ 18.

¶ 40. And the nature of the claims in the respective cases is fundamentally different. The appealed reclassification decision affected the rights and obligations of the Town with respect to the disputed road segment and the public rights of access to the disputed corridor. Demarest I was not a case about the individual rights of access of any particular landowners; it was about the validity of a municipal act and its impact on public rights of access shared in common by all travelers on the affected roads. This case, by contrast, is solely focused on a particular abutting landowner's private right of access—a right that is not necessarily coextensive with the public rights of access at issue in Demarest I. See Okemo Mountain, Inc. v. Town of Ludlow, 171 Vt. 201, 207, 762 A.2d 1219, 1224-25 (2000) ("The general rule is that an owner of property abutting a public road has both the right to use the road in common with other members of the public and a private right for the purpose of access."). In short, plaintiff in this case is not seeking to relitigate the reclassification decision; he is appealing a denial of his claimed, and yet-unadjudicated, private right of access from subdivided lots on his property over the Crane Brook Trail.

¶ 41. Moreover, the claims in this case and the challenge to the 2010 reclassification decision in no way form a convenient "trial unit." Restatement (Second) of Judgments § 24(2). This is due both to the distinct procedural postures of the claims, and the divergent legal and factual predicates. With respect to the first point, because Demarest I was a Rule 75 appeal of a municipal

17

decision, the trial court reviewed the Town's reclassification decision on the record. It did not hold an evidentiary hearing to determine whether the Town's decision comported with the applicable law. And its standard of review was accordingly deferential to the Town. For purposes of analyzing claim preclusion, a Rule 75 appeal is thus very different from a freestanding claim initiated in court by a plaintiff. Plaintiff could not have litigated the claims at issue in this case in the context of the 2010 municipal reclassification proceeding. And on appeal to the trial court, if plaintiff had sought to interject a claim asserting a private right of access to future subdivided lots, the court's analysis would have been effectively, if not formally, bifurcated: the court would have decided the reclassification issue based on a previously established municipal record, and it would have evaluated the private-access claims on the basis of a record developed during the superior court proceeding and presented through summary-judgment motions or an evidentiary hearing. Procedurally, there would have been virtually no overlap in the trial court's resolution of the Rule 75 appeal on the one hand, and plaintiff's individual claims on the other.

¶ 42.   In addition, the legal and factual underpinnings of the two claims are entirely distinct. In Demarest I, this Court reviewed the municipal record to determine whether it supported the Town's conclusion that the "public good, necessity and convenience of the inhabitants of the municipality" required the Town's reclassification. 2013 VT 72, ¶ 21. And it considered the abutting property owners' arguments that the Town should have been required to remedy the deterioration of the road before undertaking its reclassification determination. In contrast, this case is about plaintiff's private statutory and common-law rights of access. Legally, plaintiff relies on the common-law private right of access recognized in Okemo Mountain, and the statutory right of access codified at 19 V.S.A. § 717(c). Critical to these claims is his assertion that topographical features and wetlands on his property prevent reasonable interior access to much of the subdivided property from the Fuller Road access to his property. The facts and law relevant to plaintiff's

18

claim to a private right of access in this case have very little to do with the facts and law driving judicial review of the Town's reclassification decision.[5]

¶ 43. Finally, I disagree with the majority that treating the final judgment in the reclassification appeal as extinguishing plaintiff's claimed private rights conforms to the parties' expectations. See ante, ¶¶ 16-20. For all of the reasons above, I cannot agree that the parties would have expected that plaintiff's joining the reclassification appeal would preclude him from later pursuing his claim to an individual right of access in connection with a later subdivision of his property. But an additional factor influences my assessment on this point: plaintiff did not appeal the Town's reclassification decision alone. He was one of two landowners who challenged the reclassification. In the context of a joint appeal of a municipal determination concerning the status of the road and the public's rights generally, I do not agree that the parties would have expected one of the unrelated appellants to initiate and interject private claims, specific to that appellant only, into the joint appeal.

¶ 44. For these reasons, I cannot agree that plaintiff's claims in this case are barred on the basis of claim preclusion. I would remand for the trial court to address the merits of plaintiff's claims.

_____

Associate Justice

_____

[5] The majority ascribes significance to the fact that we noted in Demarest I that the Town had taken steps to ensure that plaintiff's driveway would connect to the class 4 portion of the roadway. Ante, ¶ 15. By virtue of the distinct principle of issue preclusion, it's possible that plaintiff may be foreclosed from challenging the sufficiency of his driveway access, or even his interior access, in this action. Resolving this question would require an analysis of the record and decision in the Demarest I case, as well as plaintiff's contentions in this case, in light of the factors set forth in Trepanier v. Getting Organized, Inc., 155 Vt. 259, 583 A.2d 583 (1990). The reference in Demarest I to plaintiff's driveway access has little bearing on the logic of the majority's analysis as to claim preclusion.